CALE, *Appellant,* v. PARKER.

**Mistaken Possession, when Adverse.** Where the owner of a tract of land takes into his inclosure adjoining land which does not belong to him, the possession of the latter will be deemed adverse to the true owner if it is held under the belief that the land lies within the bounds of his own tract, and without any purpose of

surrendering. it to the true owner when the true line shall be ascertained. (Following *Walbrunn v. Bullen,* 68 Mo. 164.)

*Appeal from Johnson Circuit Court.*—HON. F. P. WRIGHT, Judge.

AFFIRMED.

*Walker & Field* and *Alexander & Chiles* for appellant.

*H. C. Wallace and Crittenden & Cockrell* for respondent.

HENRY, J.—This was an action of ejectment in the common pleas court of Lafayette county, taken by change of venue to the circuit court of that county, and from that court by change of venue to the Johnson circuit court, in which a trial resulted in a judgment for defendant, from which plaintiff has appealed. The suit was to recover a strip of land off of the south end of the east half of the northwest quarter of section 11, township 48, range 25, 140 feet wide on the east, and 136 feet wide on the west side, and eighty rods in length. Plaintiff and defendant are coterminous proprietors, and the dispute is in relation to the boundary line between them. The evidence for plaintiff tends to show that the strip of land in question was north of defendant's true line, while the evidence for defendant tends to prove that it was within the true boundary lines of the southwest quarter of section 11, township 48, range 25, of which, it is not denied, he was the owner.

The defendant's answer was a general denial and a plea of the statute of limitations. The defendant had been in possession of the said quarter section and the strip in controversy since 1843. In 1854 the county court of Lafayette county established a county road which ran between the quarter sections owned by plaintiff and defendant, the south line of which road was the north line of the strip in controversy, and it was proved that for ten years before it was established as a county road it had been traveled and used as a neighborhood road; that after it

became a county road, first defendant and then Lewis Jones, under whom plaintiff claims, were appointed and acted as overseers of said county road, the latter from 1856 to 1860 or 1861. The defendant planted a hedge fence along the south line of the road. George W. Davis entered the land now owned by plaintiff, and lived there while the road was traveled as a neighborhood road, and built his fence and house along the north line of the road. Parker, defendant, cultivated this land up to the south line of the road, and Davis and Jones cultivated their land to the north line of the road. In 1843 defendant took possession and inclosed the southwest quarter of section 11, township 48, range 25, except about 100 yards on the east side, with a paling fence, including the land in dispute, and in 1854 planted the hedge where the paling fence had stood. In 1843, Higgins, through whom defendant derives title, had De Sha Graves to survey his land, and that survey ascertained that the middle of what was afterwards the county road was the north line of the southwest quarter of section 11.

Thus matters stood; the co-terminous proprietors each regarding and treating the line established by Graves as the true line, and claiming to it until a survey was made by Bliss in 1871, which fixed the line between the two quarter sections south of the county road within three feet of defendant's house, and placing the strip in question in the northwest quarter of the section. Defendant testified: "I always considered the line in the road as the government line. I supposed I was fencing in my land according to the government line. I did not think I was fencing any body else's land. I claimed to the survey (as made by Graves). I intended to claim only to the government line, but claimed to the middle of the road, and believed that to be the government line, and still believe it."

Lewis Jones, witness for plaintiff and through whom plaintiff claims title, testified that he went on the land now owned by plaintiff as his father's tenant in 1853, and pur-

chased an interest of two-thirds in 1857; that during the time he lived on the land the line occupied by Parker's fence was acquiesced in as the line because he did not know where the line was; that there was no agreed line between him and Parker. John B. Jones testified for plaintiff that he took possession of the same tract in 1862, and used up to the fence on the north side of the road supposing it to be the correct line; knew no better until 1871; the fixing of the corner by Bliss was the first time he discovered the true line.

The following instructions were given for plaintiff:

1. If the court believe from the evidence that the corner to sections 34 and 35, on the township line between 48 and 49 and range 25, sought to be established in the proceeding instituted by John B. Jones, is the true government corner, and the survey made, based thereon, by Byron Bliss is a correct survey and establishes the true government line, and by said survey the land sued for by plaintiff is a part of the east half of the northwest quarter of section 11, township 48, range 25, then the court will find for the plaintiff, unless the court finds the plaintiff is barred by limitation or estopped from claiming said land.

5. If the court finds for the plaintiff he will assess to plaintiff such damages as plaintiff has proven he has sustained from the loss of the possession thereof from the beginning of this action, to-wit: February 27th, 1872; not to exceed, however, the sum of $200. And the court will further find the monthly value of the rents and profits of said premises not to exceed the sum of $10 per month.

The plaintiff asked the court for the following declarations of law, all of which were refused, and the third and seventh modified and given:

2. If the court believe from the evidence that by running a line from the known government corner at the southeast corner of section 22, township 48, range 25, and allowing eighty chains to the mile, and throwing all the surplus land along said line to the north half of the north-

ern tier of sections, would throw the quarter section corner between section 10 and 11 far enough south of the road running through said sections as to include the land sued for by plaintiff in this cause, south of said road, as being a part of the east half of the northwest quarter of said section 11, then the court will find for plaintiff for so much of said land as he sues for in his petition, unless the court believes plaintiff is barred by limitation or estopped from claiming or recovering said land.

3. If the court believes from the evidence that the plaintiff and defendant are adjoining proprietors, and that the line between them was run by De Sha Graves, county surveyor of Lafayette county, which said plaintiff and defendant supposed to be the true line between their said lands, and each made improvements on his land with reference to said line as being the true government line, yet, if said line so run by said De Sha Graves is not the true government line between the land of plaintiff and defendant, and that said line was so recognized and improvement made by said parties through mistake and misapprehension that said line was the true government line, and that the true government line is south of the land in suit, which is a part of the land of plaintiff, then the court must find for plaintiff.

4. If the court finds from the evidence that the land in suit is a part of the east half of the northwest quarter of section 11, township, 43, range 25, as recognized and laid down by the surveys and instructions of the United States, then the court must find for the plaintiff.

6. If the court, sitting as a jury, believes from the evidence that the plaintiff, or those under whom he claims, through mistake or ignorance of the true line separating his land from that of defendant, permitted and suffered defendant to occupy the land in controversy, such occupation by defendant was not adverse to plaintiff, or those under whom he claims. There can be no estoppel where the parties acted under a mistake of facts.

7. If the court believes from the evidence that the land sued for is a part of the east half of the northwest quarter of section 11, township 48, range 25, and that it has been in the possession of Wm. P. Parker, and such possession permitted and suffered by the plaintiff, and those under whom he claims, under a mutual mistake as to where the true line between the northwest quarter and southwest quarter of said section 11 really was, then the plaintiff is not estopped from claiming and recovering said land, nor does the possession of the defendant for more than ten years before the beginning of this action, bar plaintiff from recovering possession thereof in this action; [unless the defendant took possession of said land and occupied and improved the same in good faith, believing the same was his own land].

For defendant the court declared the law as follows:
1. If the court believes from the evidence that De Sha Graves, the county surveyor of Lafayette county, in the year 1843, had copies of the original field notes, and from them found the original government corners at the southeast corner of section 11, and at other corners, and from such living corners and according to distances of said government field notes made said survey and established said line running east and west through said section 11, and corners on said line, and that defendant, Parker, in 1843 and 1844, took possession in good faith of the said southwest quarter of said section 11 up to said line so marked out by said Graves, and has ever since had, held and possessed said land, believing the same to be his own land, up to said line as and for his own land, then the court will find for the defendant.

2. If the court believes from the evidence that defendant, for ten years and more before the commencement of this suit, and after the year 1847, had been in the open, notorious and adverse possession of the strip of land in controversy in this suit, claiming title thereto and exercising the usual acts of ownership over the same, then such possession vests a complete title to such land in defendant,

and the court will find for defendant; unless the court is satisfied from the evidence that plaintiff is the legal owner of said land and entitled to the possession thereof, the finding will be for the defendant.

4. If the court believes from the evidence that the county road leading from Freedom Chapel west through said section 11, township 48, range 25, in Lafayette county, was sanctioned and acquiesced in by plaintiff, and those from and through whom he claims title, as on the line between the lands on the north and south sides of the said road in said section, as surveyed and marked out by county surveyors, and that defendant, on the faith of such sanction and acquiescence, and such surveyed line as the true line, inclosed the land south of said traveled road with his land in the southwest quarter of said section 11, as far back as 1844, and has ever since had and held the possession of the strip of land in controversy, claiming title to the same as his own property, openly, notoriously and adversely, with the knowledge of the plaintiff, and those from and through whom he claims and derives title, and on the faith of such acquiescence in such line that defendant has cultivated continually, said strip of land as his own, and has made lasting and valuable improvements on the same, and under the belief that such road was on the true dividing line between the northwest and southwest quarters of said section 11, with the knowledge and acquiescence of plaintiff, and those from and through whom he claims title to part of said northwest quarter of said section, then plaintiff is barred and estopped from claiming said strip of land in this suit, and the court will find for the defendant.

The third and seventh asked by plaintiff were given with this qualification added by the court, " unless the defendant took possession of said land and occupied the same in good faith, believing it was his own land."

The question for determination is the same which this court has passed upon in *Knowlton v. Smith*, 36 Mo. 507; *Kin-*

caid v. Dormey, 47 Mo. 337; St. Louis University v. McCune, 28 Mo. 481; Thomas v. Babb, 45 Mo. 384; Tamm v. Kellogg, 49 Mo. 118; Hamilton v. West, 63 Mo. 93, and Walbrunn v. Ballen 68 Mo. 164. In the latter case there was a brief review of the preceding cases, and the court declared the doctrine deducible from them to be, that " if any one, by mistake, inclose the land of another and claim it as his own, his actual possession will work a disseizin, but if ignorant of the boundary line, he makes a mistake in laying his fence, making no claim, however, to the land to the fence, but only to the true line as it may be subsequently ascertained, his possession is not adverse." Admitting that the true line would embrace the land in dispute in plaintiff's quarter section, and that defendant, as he himself testified, did not intend to inclose any as his beyond the true line, yet his grantor had the land surveyed in order to ascertain where that line was, and defendant, after he acquired the title to the southwest quarter, held that to be the true line, inclosed what he claimed to be his land in accordance with that survey, made valuable improvements upon the disputed strip, and has been in possession cultivating and claiming it as his own for thirty-six years, and, for twenty-five years of that time his claim was acquiesced in by the owner of the quarter section north, through whom plaintiff claims, who also held it to be the true line until 1871. In Walbrunn v. Ballen, supra, defendant had entered a forty acre tract, and by mistake took possession of a forty belonging to the plaintiff, intending to enter upon his own. The remarks in that case are applicable to this: " He claimed it as his own; he had no thought of yielding possession to a true owner if it was not his land. He had no doubt that it was his, and he took possession under no other view than that it was his. It cannot be said that he intended to take and hold the land until it should be determined or ascertained whether it was his or not. No such thought was in his mind. He had one thought, that it was his land, and he would take possession

of it and make his improvements," and it was held that such was an adverse holding.

When co-terminous proprietors are in doubt or dispute, as to the true line between them, and mutually adopt one, temporarily, for convenience, until the true line shall have been ascertained, or where a party takes possession of his land, and desiring to inclose it, but in doubt as to where a line runs, builds his fence on the supposed line, only intending to hold the land to that line until the true line shall have been definitely ascertained or fixed, in neither case is the possession adverse of so much as proves not to belong to the possessor, when the true line is ascertained or fixed. But although a party may be in doubt where the line runs between his and another's land, still, if he inclose to a certain line, claiming it to be the true one, and that the land to that line is his, his possession is adverse, and to this, rather than to either of the other classes, this case belongs. Here the precaution was taken to have a survey made, and there is nothing in the evidence to countenance the idea that defendant built his fence, or planted his hedge, for a temporary inclosure, not satisfied that the line established by Graves was the true line, and having in his mind a purpose to yield any land inclosed not his own, to the true owner, if it should afterwards prove not to be the true line. He says he intended to claim only to the government line, but claimed to the middle of the road as the government line. He set up no claim to land north of the north line of the southwest quarter, but did claim that the middle of the road was that line and that the land to that line was his It may have been a mistake it is true, but honest men always inclose land not their own by mistake or with the consent of the owner, and if the law on this subject were not as this court has held, the statute of limitations in such cases would never run in favor of an honest man, because he would never avow his purpose to have been to take the land of another.

We deem it unnecessary to determine whether the hy-

pothetical case stated in the fourth instruction for defend-- ant created a technical estoppel or not, for, whether the instruction in that regard was right or wrong, under the second instruction for defendant, and the evidence in the case, the court, sitting as a jury, could not have hesitated to find a verdict for defendant. The fourth instruction required the jury to find the same facts as the second, and in addition, the fact that plaintiff, and those under whom he claimed title, had acquiesced in the establishment of the county road, and had also acquiesced in the same as the true line between the two quarter sections, and tells the jury, if they so find, that plaintiff is barred and estopped from claiming said land.

The court instead of declaring that on these facts, plaintiff was barred and estopped from claiming the land, might have declared that he was not entitled to recover. All the facts which constitute adverse possession were, by this instruction, required to be found in favor of defendant before he could have a verdict, and whether the verdict was based on the idea of an estoppel, or because there was an adverse possession for the statutory period, can make no difference. It required more facts to be found for defendant to entitle him to a verdict than were required by the law or the second instruction, which was a correct declaration of the law, and was, therefore, more prejudicial to defendant than to plaintiff. The judgment is affirmed. All concur.