Mr. Justice James
delivered the opinion of the Court:
This is an action of trespass for cutting down the wall of the plaintiffs’ dwelling house. The defendant claims that the house in question encroached 8 inches upon his land, and that, after reasonable notice to the plaintiffs, he had removed the encroaching part of the building in. order, that he might build on the line of his own lot, using-in doing so reasonable care and skill.
The parties were adjoining owners, and the question in this case is whether the plaintiff had acquired title to the 8 inches in controversy by adverse possession.
It appears by the bill of exceptions that one Frederick Koones testified that he purchased from one Bay ley the the whole of lot 16 in square 499, on the 15th of May, 1852; that about a year afterwards he liad a survey of the said lot made by the then city surveyor, who located what he represented to be the exact metes and bounds thereof; that thereupon he built two frame houses upon the eastern part of said lot as so located, and that the house in controversy is the eastern one, and now stands where it was then built; that he claimed the said two houses and the ground upon which they were built as his property down to the 25th of September, 1857, when he sold the same to one Colquhoun; that while lie held them he supposed that they were entirely built upon his own ground, and had intended to build them on the property covered by his deed ; but that having built them he claimed them as they stood as his own. On cross-examination he further testified that he did not know of any mistake by the surveyor until about two weeks before the time of this trial, and that he intended to claim lot 16, which his deed called for, and always supposed that the *11 house stood on that lot; but that he did in fact claim the whole of the ground covered by the said houses.
Susan Sheldon testified on behalf of the plaintiffs that Colquhoun died in the year 1863. His last will was produced in evidence, by which he devised and bequeathed h> his sister, Mary S. Williams, all the property of which he died possessed. The same witness testified that Mary S. Williams died intestate, and that Elizabeth Williams was her sole heir at law. Plaintiff produced a deed from Elizabeth Williams-to Thomas Neale, dated May 11, 1873, and plaintiffs introduced evidence to show that Thomas Neale died intestate, leaving them his sole l^eirs at law. Susan Sheldon further testified that she occupied the whole of the house in controversy as tenant to Colquhoun, Mary S. Williams, Elizabeth Williams, and Thomas Neale, continuously, until about two years before the death of the latter, in 1888, paying rent to them successively.
The deeds and the will introduced by the plaintiffs contained the following descriptions of the property conveyed : The deed from Bayley to Koones described it as “ lot 16 in square 499 ; ” the deed from Koones to Colquhoun described it as part of lot 16, being 26 feet in front, together with the buildings belonging to the same. Colquhoun’s will devised to Mary S. Williams all of his property without describing it, but adding: “I mean everything I possess — real, personal,and mixed.” Elizabeth Williams’s deed to Neale describes the premises as “ being the same property conveyed by deed from Frederick Koones to W. S. Colquhoun, and the same devised by the will of Colquhoun to Mary S. Williams,” and then adds: “together with the-buildings ” belonging to the same. These conveyances will be considered presently in connection with the question of continuity of adverse possession.
The plaintiffs further introduced testimony tending h> show that one Wright succeeded Susan Sheldon, and occupied, as tenant under' Thomas Neale and the plaintiffs, *12 ■down to the time of the alleged trespass, and also the circumstances of the trespass in cutting away and removing a portion of plaintiffs’ house.
The defendant, as a witness on his own behalf, testified that, after purchasing lot 17, in 1877, immediately adjoining lot 16 ou the east, he had it surveyed, in September of that year, by the then city surveyor, when he discovered that plaintiffs’ house encroached 8 inches on his lot, as ■located by the surveyor. He further offered testimony tending to show that he had informed the said Neale, father of the plaintiffs, of the encroachment, “and that said Neale had stated, both to the defendant and to other witnesses, that he would remove the said encroachment whenever said defendant was ready to build on his said lot 17, and that he had inquired about the cost of said removal.”
Upon this evidence the court gave to the jury the following instructions at the request of the plaintiffs :
“If the jury shall find from the evidence that, prior to the alleged admissions, promises, and agreements testified to on behalf of the defendant, as having been made by Thomas Xeale, the father of the plaintiffs in this suit, the said Neale had, through himself and his grantors, been in actual, undisputed, and continued possession of the premises in controversy in this suit, claiming title thereto for the full and uninterrupted period of twenty years, they are instructed to disregard the alleged admissions, promises, or agreements, and to make up their verdict as though no such testimony had been offered or received in the case.”
This instruction involved two propositions; the first relating to the law of adverse possession, the second to the effect of certain admissions or promises made by the possessor after the period of twenty years had elapsed. The jury were told, in effect, that actual, undisputed, and continued possession by Neale, through himself and his grantors, claiming title for the full and uninterrupted period of twenty years, would establish a legal title in him, and that *13 the admissions and promises alleged to have been made by-him after that period could not affect that legal title, and., were therefore to be wholly disregarded.
When possession is to be deemed adverse, so as to set the Statute of Limitation in motion, has been the subject of variable definition, even by the Supreme Court of the United States. In Clarke’s Lessee vs. Courtney, 5 Peters, 354, Mr. Justice Story, speaking for the court, said :
“ If a mere trespasser, without any claim or pretense of title, enters into land and holds the same adversely to the title of the true owner, it is an ouster or disseizin of the latter.”
It would seem to follow that, since disseizin puts the true owner to his re-entry, the statute.must begin to run, and that claim or pretense of antecedent title is not necessary, in order to render the subsequent possession adverse. At the same term of the court Mr. Justice Johnson said, in Bradstreet vs. Huntington, 5 Peters, 440:
“ Whenever tlio proof is that one in possession holds for himself, to the exclusion of others, the possession so held must be adverse to all others.”
Claim of right is not here included, much less a claim of antecedent right. But in Ewing vs. Burnett, 11 Peters, 52, Mr. Justice Baldwin, speaking for the court, seemed to regard a claim of right, and perhaps of antecedent right, as an element of adverse possession. We suppose that any apparent conflict in these opinions is explained by the following passage in Mr. Wallace’s note to Nepean vs. Doe and Taylor vs. Horde, 2 Smith’s Leading Cases, Part II, 707 :
“ It would seem that the legal notion of an entry to divest a possession is the same with that required to revest a possession, viz: A going upon the land with palpable intention to claim the possession as his own. * * * And the nature of this claim of possession, which must accompany the intrusion into the land in order to constitute an entry, appears to be, not an assertion of existing *14 right to the laud, but the assuming of a right to the land jfrom that time, and a subsequent holding with assertion of right; and this, /it is believed, is what is meant by the -cases in New York and elsewhere, which say that the possession must be taken under claim or color of right; which, as will presen tty be seen, is also necessary to render the possession hostile. The intention to claim and possess the land is one of the qualities indispensible to constitute disseizin as distinguished from a trespass. Ewing vs. Burnett, 11 Peters, 41. For one going upon the land and staying tliere, without claiming or asserting the land to be his own, is a mere naked intruder or trespasser, and effects no ouster. Society for the Propagation, &c., vs. Pawlet, 4 Peters, 480, 504; Clark vs. Courtney, 5 Id., 320, 355.”
Whatever may have been the meaning of the Supreme Court in using these expressions, we find that the instrnc-' tion given to the jury in this case is consistent with the rulings of that' court as to adverse possession. It meets even the rule of Ewing vs. Burnett.
The rest of the instruction, as to the effect of admissions and promises of Neale, had reference to the following evidence set out in the bill of exceptions:
The defendant “ offered testimony tending to show that the defendant had informed the said Tilomas Neale, father of the plaintiffs, of the alleged encroachment, and that the said Neal had stated, both to the defendant and to other witnesses, that he would remove the said encroachment whenever said defendant was ready to build on said lot 17, and had inquired about the- cost of said removal.”
The hypothesis of this instruction is, that this conversa-ti'on, described as eithér an agreement or an admission, occurred after twenty years of adverse possession. It is not claimed by the defendant that any parol transaction, whether called an agreement or an admission, could affect a legal title actually established by adverse possession; but it is claimed that the jury should have been allowed to con *15 sider it in determining whether a legal title had been so established. At the argument it was urged that Neale’s promise to remove his’house might be construed as an admission that he had no right of possession, and that this involved ’the further admission that his possession had not been held with the necessary adverse intention. The argument is, that it should have been left to the jury whether they should put this construction upon Neale’s promise to give up the possession, and defendant’s complaint is that they were not^allowed to consider it for airy purpose whatever.
We think that even for 'the purpose suggested, the alleged promise could not properly have been submitted to the jury. With nothing but a simple promise before thenr a jury cannot be allowed to guess what reasons caused the making of it; much less can such guess at the promissor’s reasons be allowed to have the effect of a finding that the reasons imputed by them were facts in the case. And that is all that a conclusion that Neale’s promise was an admission that he had not held adversely -would have amounted to. Their reasoning must have been substantially as follows :
We think Neale promised to remove because he believed he had no legal right to stay there; he believed he had no legal right to stay because he knew that ho had not held possession with an adverse intention to claim this strip ; therefore, we find as a fact that his possession was not held with such intention, and that title by possession is not made out. It is hardly necessary to demonstrate that no such method of finding facts can be allowed.
The inadmissibility of this evidence, as tending to show that Neale had not held with the necessary adverse intention, may be presented in another aspect: The introductory testimony in the record was,'that in September, 1877, that is, after the lapse of twenty years of possession, the defendant had lot 17 surveyed, and thereupon informed Neale of *16 • the encroachments. In the absence of any evidence of earlier information, this must be taken to be Neale’s first knowledge of encroachment. Thereupon he expressed, in-the form of this promise, an intention to abandon any further claim to the premises. We think that an intention to-abandon or disclaim, caused by such knowledge, did not in any way tend to show that ho had not theretofore, when he-had no such knowledge, claimed the strip in controversy as his own; in other words, claimed it adversely. Whether evidence shall be admitted; as tending to show a fact, is a question for the court, and this evidence did not tend to-show what Neale’s previous intention-had been.
The defendant sought to raise the same question more directly, by asking an instruction which assumed that Neale “ acknowledged the defendant to be the true owner of so much of lot 17 as was occupied by his (Neale’s) frame-tenement, and disclaimed any title thereto in himself, and promised to remove said tenement, so far as it encroached on Leo’s lot 17,” &c. It is unnecessary to consider -what the-effect of such an instruction would have been, if it had correctly stated the testimony to which it referred. It is enough to say that it was properly refused, because it was not based upon any evidence in the rpcord.
In conclusion on this point we may add that wo are not called upon to determine what effect Neale’s actual expressions would have had, if uttered before the period of limitation had expired.
The defendant next complains that the jury were prevented from considering still another element in determining that the plaintiff’s title was established by adverse possession. He asked, and ivas refused, the following instruction: “If the jury find from the evidence- that when Mr. Koones built his frame house and erected the fence described-by him in his testimony in this case, on lot 16, in square 499, in 1853, that his occupation of part of the adjoining lot 17, in said square, was by mistake and with *17 out any intention on his - part to claim title to any part of lot 17, then his occupancy of part of lot 17 cannot constitute a basis-for title by adverse possession, and the plaintiffs could not be entitled to recover, and your verdict should be for the defendant, unless you find that the defendant, in cutting away so much of the plaintiff’s house as encroached on lot 17, proceeded in an imprudent manner and inflicted unnecessary damage upon the plaintiffs.”
The defendant insists that this prayer was justified by evidence tending to show that Koon.es encroached upon lot 17 by mistake as to the true place of the boundary between lots 16 and 17, and without intention to take or hold adverse possession of any part of lot 17 as such. Pie claims that therefore there was no intention of adverse’possession of the premises in controversy.
Possession by encroachment, originating in mistake or ignorance of the true boundary, has been the subject of numerous and conflicting decisions in this country. We have carefully examined all of the cases cited at the argument on both sides, besides some that were not cited, and may say at once that the question is not to be settled by mere preponderance of numbers. It will be sufficient to refer to such of them as distinctly present the reasoning on which these-conflicting opinions have been founded.
In Winn vs. Abeles, 35 Kaus., 85, it appeared that the defendant owned lot 9, but built over on lot 10. He had no knowledge, until about the time of the controversy in suit, that his building extended beyond his own lot, no survey having been made. The court held that his actual possession was not adversary, because he supposed his building rested entirely upon lot 9, and made no claim to any portion oíf'thé adjoining lot. Whether the defendant should be regarded as claiming that the strip in controversy was not a part of lot 10, but -was a part of his own lot 9, was not considered. The solution seems to have been that he -did not pretend to be owner of lot 10, and this strip was in fact *18 a part of that lot, and was consequently something which he did not claim.
In Grube vs. Wells, 34 Iowa, 148, the plaintiff and defendant owned adjoining lots. The latter had set his feuce about 15 feet over on to plaintiff’s land, and had held actual possession for the period of limitation. The court said:
“An essential ingredient of adverse possession is a claim of right hostile to the true owner. * * * The defendant’s grantor, when he entered upon the land in dispute, did not claim title thereto. ITe claimed title to lot 1, but to no part of lot 260. * * * He took possession of more than he claimed.” Here, also, it appears that the question whether the actual occupant should bo regarded ag claiming title to the premises in controversy, by claiming that it was part of his own lot 1, and not a part of the adjoining lot 260, was not considered. It was assumed that as he only claimed lot 1, and as the strip in controversy was not a part of lot 1, it followed that he did not claim it.
The defendant further cited, among others, in support of his proposition that possession by mistake was not adverse, the following cases: Dow us. McKenney, 64 Me., 138; Kirby vs. Griffin, 16 Ga., 141; Howard vs. Ready, 29 Ga., 152; Brown vs. Cockerille, 33 Ala., 38; St. Louis University vs. McCune, 28 Mo., 481.
The plaintiffs in this case insisted, on the other hand, that while Koones and his successors in possession claimed onfy lot 16, and claimed no part of lot 17 as such, they nevertheless claimed to hold the strip in dispute as part of lot, 16, and therefore claimed that strip .as their own, and held it adversely. From the numerous citations we select the case of Seymour et al. vs. Curli, 31 Minn., 84. The distinctness with which the propositions relied on are there stated, justify an extended quotation. The court said:
“From the facts found and admitted in this case, it appears that the defendant and his grantors have been in possession of lot 1 in square 19, in the city of Stillwater, *19 for upwards of twenty years; and that plaintiffs own, and they and their grantors have been in possession of lot 2 in the same block, except the portion thereof in dispute, for more than twenty years; and that more than twenty years before the commencement of this action the grantors of the ■defendant erected a dwelling house, partly on lot 1 and partly on lot 2; ‘all of said dwelling house being on said lot 1, except that the rear or'west end of the same projected over on to lot 2 .for a distance of 3 xVir feet, and the front ■or east end of the same for the distance of 2 x$q- feet.’ It was erected by the defendant’s grantor under a claim of title to lot 1 only, and was extended over the line of lot 2 under a mistake as to the location of the boundary line, and has always been occupied under claim of title to lot 1. * * * The defendant certainly has no color of title to lot 2; yet he or his grantors entered upon the particular portion thereof under a claim, though mistaken, that he was entitled to it as being a part of lot 1, and, in so far as their possession has been an actual occupancy, it should be deemed exclusive, adverse and hostile to the plaintiffs. * * * “The intention of the defendant dr his grantor to assert an adverse claim to the disputed tract is manifested by his acts in improving and occupying it under such apparent claim, and such is the legal presumption upon the facts found. Sedgwick and Waite on Title to Land, Sec. 749. They took possession of the land in question as a part of lot 1, and intended to claim it as their own, though they were mistaken as to the boundary. The object of the-statute is to quiet titles and disputes. If the plaintiffs have a cause of action in ejectment, there would seem to be no good reason why the statute should not run against it, as in other cases where the possession of land is withheld. It is the policy of the law that parties should assert their claims to the possession of land, and rectify their boundaries within the statutory term.”
The plaintiffs referred also to the following cases, among *20 others: Grim vs. Murphy, 110 Ill., 277; Tracy vs. Newton, 57 Iowa, 212; Hitchings vs. Morrison, 72 Me., 331; Ricker vs. Hibbard, 73 Id., 107; Bunce vs. Bidwell, 43 Mich., 546, 547; Wallbrunn vs. Ballen, 68 Mo., 167; Cole vs. Parke, 70 Mo., 379; Moole vs. Long, 64 N. C., 435.
In most of the cases relating to possession beyond a boundary, the question was whether a fence had, in the circumstances of the particular case, been placed with intention to take adverse possession. If the boundary line was admitted, and the fence was merely a tentative effort to find and conform to it, and was misplaced by mistake, the possession taken by it was held not to be adverse. If, on the other hand, the circumstances showed that the location of the fence was intended to be an assertion that the true boundary line was at that place, then the act constitutes a claiming of title, and the possession was adverse. In Moole vs. Long, supra, the Supreme -Court of North Carolina stated this distinction clearly. Referring to the earlier cáse of Gilchrist vs. McLaughlin, 7 Iredell, 310, where the fence ivas held not to import adverse possession, the court said: “There the defendant, after the trial of an action in which the true line was determined, and intending to set his fence back to that line, by mistake put one or two corners of the fence across the line. * * * The court held that this was not an open, notorious and adverse possession, * * * his intention being to pursue that line. * * * In our case, clearing and fencing a field up to a line of marked trees, was certainly an open and notorious act, and the mistake was not in attempting to set a fence with a line, but in asserting another and different line to be the true one', and making it necessary to have a law suit in order to show the mistake and establish the true line. Here the mistake was in regard to which of the two lines was the true line of Smart’s grant, called for in the deeds of both parties.”
In such cases the question might fairly be supposed to be an open one, whether the builder of a fence claimed for *21 Lis own what he thus occupied; but occupation by means ■of a house plainly presents a different aspect. In Grube-rs. Wells, supra, the Supreme Court of Iowa, while holding that the fence there in question did not indicate adverse possession, conceded this very distinction. The court said:
“The term claim implies an active'assertion of right— Ihe demand for its recognition. This assertion and demand need not be made in words; the party may speak by his -acts in their support, as by the payment of taxes, erection •of improvements’’ &c.
In the case before us, it appears that Koones built his house after procuring a survey of his own lot for the purpose of ascertaining where his bouncla'ry was, and that he •claimed the line-on which he built it to be the true boundary of lot 16. His possession .of all that lay within this ■assumed line was necessarily hostile to the'owner of the adjoining lot. The latter was at once put to his action, and the Statute of Limitations began to run.
The remaining question is whether this adverse possession was maintained by his grantees for the whole period of the limitation. On that subject the-court instructed the jury as follows:
■ “ If the jury shall find from the evidence that Koones entered into possession of the parcel of land in dispute in this case, claiming the same under the deed from Bayley and wife, which has been offered in evidence, and in the year 1853 built a house which covered in part the said parcel of land, and continued to use, occupy and claim title to said house by himself or his tenants, and afterwards •executed the deed to Colquhoun of September, 1857, offered in evidence, and that said Colquhoun, in like manner, entered upon the use and occupation of said house and premises, claiming title thereto under said deed, and that’ the said Colquhoun afterwards devised the property to Mrs. Williams, who entered upon the same, used and occupied it, claiming title thereto under said devise, and that after *22 her decease Elizabeth Williams entered upon the said premises as her heir-at-law, she being admitted to be said heir, and in like maimer used and occupied the same, claiming title thereto, and that afterwards the said Elizabeth Williams, as heir-at-law aforesaid, executed the deed of 1873 to Thomas Neale, which has been offered in evidence, and the said Thomas Neale entered upon said house and premises, using, occupying and claiming the title thereto, and continued so to use and occupy the same by himself or his tenants as his own property under said claim of title, and that after his decease the said plaintiffs were his heirs-at-law, and as his heirs-at-law, by themselves or their agents, entered in like manner upon 'said premises, claiming title thereto; then the plaintiffs have established a complete, legal and indefeasible title to the premises in-question, and the several conversations or admissions which have been offered in evidence as having been made by Thomas Neale in the year 1877 and subsequently, are no bar to the plaintiffs’ title to said premises, nor to their right of recovery -in this action, for any injury which may have been done to their reversionary interest in said premises.”
There is some diversity in the American decisions as to what method of succession will preserve the unity under the Statute of Limitations; but they agree in requiring a devolution, from occupant to occupant, of the seizin of the first adverse possession. It is unnecessary to consider those diversities, since the transfers supposed in this instruction would satisfy the most exacting rule. The devolution in this case was, if it occurred at all, by conveyance, devise and inheritance; the only question is whether certain of the conveyances operated in that way. Some exception was taken at the argument to the fact that Koones’ deed to Colquhouu and Elizabeth Williams’ deed to Neale described by metes and bounds the premises conveyed, and that these-did not include the strip in controversy. But it is to be-observed that those deeds conveyed also and specifically the- *23 building thereon. The building occupied the space in dispute, and was transferred just as it stood. In effect, then, the grantor transferred his possession of the land occupied ; the grantee could not receive possession of the building without receiving possession of the land also. Then, as to the will mentioned, it is to be observed that it purports to devise all of the real estate of which the testator was possessed. That included the possession in question. We find, then, that there was such a devolution of the possession of Koones, who made the first entry, as to constitute one adverse possession for more than twenty years, and thereby establish in the plaintiffs a legal title to the premises.

The judgment of the Circuit Court is therefore affirmed.