## JACOBS, *Appellant*, v. MOSELEY *et al.*

1. **Division Line**: ADJOINING PROPRIETORS : SUPPOSED LINE. Where two adjoining proprietors of land are divided by a fence, which they suppose to be the true line, each claiming only to the true line, they are not bound by the supposed line, but must conform to the true line when it is ascertained.

2. ——— : ——— : AGREED LINE  Where there is a dispute as to the true division line between adjoining proprietors, or the line is uncertain, or they are both ignorant as to its true location, and they fix and agree upon a permanent boundary line, and possession is taken, accordingly, the agreement is binding on them and those claiming under them.

3. **Statute of Frauds**: EJECTMENT : DEFENCE UNDER GENERAL DENIAL. Such an agreement is not within the statute of frauds, and need not be specially pleaded as a defence in e jectment.

4. **Agreed Line, Evidence of.** The agreement need not be shown by direct evidence, but may be inferred from the acts and conduct, and especially from the long acquiescence of the parties.

5. ———. The evidence in this case *held* to show no such agreement between the parties.

6. ———. One in possession of land, under an agreement on the part of his father to give it to him, has such an interest therein as to make an agreement with an adjoining proprietor, concerning the true division line, binding on him.

7. **Government Monuments.** So long as the monuments placed upon the earth's surface by the United States surveyors can be identified, there are no lost corners, and they control, no matter what more recent surveys, by courses and distances, disclose.

*Appeal from Boone Circuit Court.* — HON. G. H. BURCKHARTT, Judge.

REVERSED.

*A. M. Hough* for appellant.

(1)   The court erred in refusing instruction number

seven, asked by plaintiff. There was no evidence upon which the court could find for the defendants on the ground of estoppel. The evidence in the case does not show a single element of estoppel. *Acton v. Dooley*, 74 Mo. 63 ; *Donaldson v. Hibner*, 55 Mo. 492 ; Bigelow on Estop. 525, 526, 521, 524; *Kincaid v. Dormey*, 51 Mo. 552 ; *Bales v. Perry*, 51 Mo. 453 ; *Ormsby v. Ihmsen*, 34 Pa. St. 472 ; *Hill v. Epley*, 31 Pa. St. 334 ; 3 Wash. Real Prop. 75, 78 ; *Burk v. Adams*, 80 Mo. 504 ; *Spring v. Hewson*, 52 Cal. 442 ; *Chapman v. Crooks*, 41 Mich. 595 ; *Dougal v. Fryer*, 3 Mo. 40 ; *Liverpool Wharf v. Prescott*, 7 Allen, 494. (2) Instruction number seven, given for defendants, should have been refused. There was no evidence upon which to base it. There was no evidence, whatever, that, prior to 1879, or at any time, a boundary line had been "established by mutual agreement made between the plaintiff and the person or persons under whom defendants claim title to their said lands." The instruction makes a case for defendants not made in their answer, nor is the case made in the evidence. It is error to give an instruction where there is no evidence to authorize it. *Parker v. Marquis*, 64 Mo. 38; *Weiland v. Wayland*, 64 Mo. 168; *Kreech v. Railroad*, 64 Mo. 172; *Clark v. Railroad*, 64 Mo. 440 ; *Lillis v. Railroad*, 64 Mo. 464; *Brown v. Insurance Co.*, 86 Mo. 51. (3) The seventh instruction given for defendants should not have been given, because plaintiff did not own the land when the mutual agreement is supposed, by instruction numbered seven for defendants, to have been made "between the plaintiff and the person or persons under whom defendants claim title to their said lands." Estoppel *in pais* operates only on existing rights. It cannot be invoked against an after-acquired title. *Donaldson v. Hibner*, 55 Mo. 492 ; *Barker v. Circle*, 60 Mo. 258; Bigelow on Estop. 525. (4) Defendants' seventh instruction is erroneous, for the reason that it states that "plaintiff is bound by said line, and

is not permitted to dispute its correctness in the absence of fraud." Plaintiff is not attempting to estop defendants, therefore, he is not required to show any fraud on their part. But as defendants are seeking to estop plaintiff, by their testimony, it is necessary that they should show that to permit plaintiff to dispute the supposed agreed line would operate a fraud on defendants. Plaintiff can only be estopped on the ground that he has knowingly deceived or misled defendants, or the person or persons under whom they claim title, to their injury, and caused them to change or alter their position, and that it would be a fraud to allow plaintiff to deny those facts. *Bales v. Perry*, 51 Mo. 453; *Ormsby v. Ihmsen*, 34 Pa. St. 472; *Hill v. Epley*, 31 Pa. St. 334; 3 Wash. Real Prop. 75, 78. (5) The court erred in giving instructions one and seven, on the part of the defendants. Instructions should be framed solely with reference to the issues. It is error to instruct on issues not raised by the pleadings. There was no plea of estoppel. *Moffatt v. Conklin*, 35 Mo. 453; *Camp v. Heelan*, 43 Mo. 591; *Bank v. Murdock*, 62 Mo. 70; *Hassett v. Rust*, 64 Mo. 325; *Noble v. Blount*, 77 Mo. 242; *Benson v. Railroad*, 78 Mo. 504. (6) The court erred in sustaining defendants' motion, made at the trial, "allowing defendants to avail themselves of the plea of estoppel, when they had withdrawn and stricken said plea of defence out of their said answer." Facts relied upon as an estoppel *in pais* must be specially pleaded. *Miller v. Anderson*, 19 Mo. App. 71; *Weise v. Moore,* 22 Mo. App. 530; *Bray v. Marshall*, 75 Mo. 325; *Noble v. Blount*, 77 Mo. 235; *Hammerslough v. Cheatham*, 84 Mo. 13.

*Smith, Silver & Brown* and *C. B. Sebastian* for respondents.

(1) The instructions given assert the correct doctrine of the law of estoppel *in pais* as applicable to the

case. *Lemmon v. Hartsook*, 80 Mo. 13. (2) Where evidence is admitted without objection, and the issue goes to the jury thereon, the appellate court will not reverse the judgment to try the case over on an amended pleading. *Wise v. Railroad*, 85 Mo. 178 ; *Stack v. Lyon*, 9 Pick. 65 ; *Leabo v. Goode*, 67 Mo. 135 ; *Noble v. Blount*, 77 Mo. 235. (3) Facts constituting an estoppel *in pais* are admissible in ejectment under the general denial. *Raynor v. Tieners*, 46 Barb. 518 ; *Phillips v. Blair*, 38 Ia. 649 ; *Cuque v. Sears*, 17 Hun, 124 ; *Tuttle v. Railroad*, 76 Va. 291. (4) The division fence was placed there in 1871 by Dinwiddie, under whom defendants claim title by purchase, with the consent and approbation of plaintiff, and in the continuance of which he had long acquiesced. After the time of the agreement and consent of plaintiff to the location of the hedge by Dinwiddie, the plaintiff was in possession of his adjoining lands by gifts from his father. A deed was afterwards made to plaintiff under the promise made when he was placed in possession, so that, at the time of the giving of his consent to the location of the hedge, and his subsequent acquiescence in its continuance, he was owner of the land.

BLACK, J.—This was an action of ejectment for 6.19 acres of land. The contest arose from a dispute as to the dividing line between the southeast and the southwest quarters of section 31, township 49, range 11, in Boone county. Plaintiff acquired the southeast quarter by a deed from his father, dated in 1876. He testified that he had lived on the land since 1863 ; that his father then gave it to him, and that the deed was made in pursuance of that agreement. A Mr. Dinwiddie owned the other quarter, and, in 1877, sold the same to Wm. Moseley, who died in 1882, and the defendants are his widow and heirs. Plaintiff, in 1867, while in possession of his farm, under the agreement with his father, built a rail fence along what he assumed to be the line. Subse-

quently, Dinwiddie planted a hedge in lieu of the north half of the fence, and that and the south half of the rail fence continued to define the possession of the respective parties down to the commencement of this suit.

Dinwiddie testified as follows: "In 1871, I saw W. H. Jacobs, and told him I wanted to set out a hedge, and he said all right; that I could move my fence over so as to set the hedge on the line, and have room to cultivate it; I moved my fence and put out the hedge, about one foot west of the line, on my land; there is a large rock on the corner of my land; it was there when I first knew the land, and is still there; it was always known as the corner-stone; there was another corner-stone at the south end of the fence, near Mr. Moseley's gate-post; the fence was run on the line between these two corner-stones, and when I planted my hedge, to be sure that I put it on my line, I put it about a foot west of the corner-stones; I grew my hedge into a fence; Mr. Jacobs saw me cultivating and growing and never made any objections, or told me it was not on the line."

The plaintiff testified that, in 1880, he and William Moseley, the deceased, had the line surveyed by Mr. Wright; that this survey placed the hedge and rail fence on him; that the corners placed by Wright were removed by some one, and he had the line re-surveyed by Wright and three other persons, all county surveyors of different counties. These surveyors all concur in saying that, by their survey, defendants are in possession of 6.19 acres belonging to plaintiff's quarter section.

Jacob H. Moseley, a son of the deceased, says, that before the Wright survey, and in 1878, Mr. Quinn surveyed some lands for him and a neighbor, on the south of the land in question; that Quinn fixed the south corner here in question one foot west of a rock, which had stood as a corner mark as far back as he could remember,

and that this corner, fixed by Quinn, was in a line of the continuations of the hedge ; that this threw the rail fence about five feet on the plaintiff.   Surveys made by Shields, as far back as 1836, were put in evidence.  They showed that he indentified these rocks, spoken of by Dinwiddie and Moseley, as half-section government monuments.

The case was tried by the court, without a jury, and was made to turn upon two instructions.   That for the plaintiff is, in substance, if Dinwiddie and plaintiff agreed upon a line, in 1871, as the true line, and the former was induced to plant his hedge near such agreed line, still, if plaintiff had no title to the land occupied by him, he is not estopped from claiming the land in dispute.   The other declaration of law, given for defendants, is, that if, prior to 1879, a boundary line was established by the mutual agreement between the plaintiff and persons under whom the defendants claim, and that the parties to the agreement, or those claiming under them, respectively, held possession up to the agreed line, then plaintiff cannot dispute its correctness.

It is the well-settled law, in this state, that where two adjoining proprietors are divided by a fence, which they suppose to be the true line, each claiming only to the true line, they are not bound by the supposed line, but must conform to the true line, when ascertained. *Tamm v. Kellogg*, 49 Mo. 118 ; *Thomas v. Babb*, 45 Mo. 384.   Where there is a dispute as to the true division line between adjoining proprietors, or the line is uncertain, and they are both ignorant as to its true location, and they fix and agree upon a permanent boundary line, and take possession accordingly, the agreement is binding on them and those claiming under them.   Such an agreement is not within the statute of frauds.   *Taylor v. Zepp*, 14 Mo. 482 ; *Blair v. Smith*, 16 Mo. 273 ; *Turner v. Baker*, 64 Mo. 218 ; *Acton v. Dooley*, 74 Mo. 63 ; Browne on Frauds, sec. 75.   We entertain no doubt

but such an agreement may be put in evidence in an action of ejectment, as a defence under the general denial. It need not be specially pleaded.

By referring to the defendants' declaration of law, it will be seen that it predicates a defence upon an agreement made prior to 1879. This excludes any consideration of the Quinn and Wright surveys, as alleged agreements connected with them, for they were both made subsequent to that date. The agreement then relied upon by the defendants must be one between plaintiff and Dinwiddie, and there is no evidence of any agreement between them, unless it arose at the time the hedge was planted, in 1871. The evidence of Dinwiddie, which is relied upon as proof of the agreement, shows that he planted the hedge with reference to what he supposed to be the government monuments—the true line—and not with reference to any adjusted line. There was then no question made as to the location of the true line. An agreement fixing a boundary line need not be shown by direct evidence. The agreement may be inferred from the acts, conduct, and, especially, from the long acquiescence of the parties. But here the evidence all tends to show that no agreement was made between the plaintiff and Dinwiddie with respect to the location of any line between them. There is no evidence to take the case out of the general rule before stated, and none to bring it within the doctrine of agreed boundary lines. The defendants' instruction should have been refused.

It may be here stated that the instruction given at the instance of the plaintiff is, also, bad. It asserts the proposition that plaintiff would not be bound by an agreement, had one been made and acted upon, because he was not the owner of the land. It may be conceded that an estoppel *in pais* only operates upon existing rights; but plaintiff had been in the posses-

sion of the land for seven or eight years, under an agreement for it with his father, and that was a sufficient interest to make such an agreement binding on him. Cases like that of *Donaldson v. Hibner*, 55 Mo. 492, are unlike this one. There, a party sought to be estopped, by his acts at an execution sale, had no interest in the property, possessory or otherwise.

As this case must go back for re-trial, we may add that there is abundant evidence that the stone on the north end of the hedge, and the one near the south end of the rail fence, spoken of by Dinwiddie and Jacob H. Moseley, are the monuments fixed as the half-section corners, by the government surveyor. If this be true, then these monuments must control, no matter what more recent surveys, by courses and distances, may disclose. So long as the monuments placed upon the earth's surface by the government surveyors can be identified, or the places where they were planted are known, there are no lost corners. Modern surveys may aid in finding the monuments, but if they can be ascertained, the discrepancies as to distances must yield to the monuments. *Knight v. Elliott*, 57 Mo. 317.

Though the instructions were erroneous, we might well affirm the judgment, because for the right party, but for the fact that the rail fence appears to be some five feet east of the south corner-stone, and, therefore, not on the line, but on the plaintiff.

The judgment is, therefore, reversed, and the cause remanded. All concur.