Brummell v. Harris.

---

BRUMMELL v. HARRIS et al., Appellants.

Division One, March 7, 1899.

1. **Ejectment**: BOUNDARY LINE: AGREEMENT. Adjoining owners of land may agree upon the division line between their premises, and each owns up to the agreed line as fully as if it were a natural boundary or their respective deeds called for it.

2. ———: ———: ———: SHIFTING FENCE. And if such boundary has once been fixed by the agreement and both sides have taken possession under it, the decay, removal or shifting of the fence has no effect on it.

3. ———: ———: ———: CONSIDERATION. The concession that each makes to the other as to what the line shall be, the drawing of the line and the taking possession under that agreement, is the consideration.

Brummell v. Harris.

4. ———: ———: ———: EVIDENCE OF THE AGREEMENT. Possession and use are evidence that there was an agreement to establish the line, and it is only necessary that such possession or use continue long enough to indicate what was the understanding of the adjacent landowners.

5. ———: ———: ———: LIMITATIONS. But if the landowner relies on the statute of limitations to fix his boundary line, he must show that he has held possession up to the line for the statutory period, claiming it as his line against the world, without any agreement concerning the line, and disregardful of developments by subsequent surveys. But if he believed the line to be the true boundary, and claimed it as such but subject to correction if subsequent developments should show it to be erroneous, then he can acquire no title beyond the true line by his possession no matter how long he thus held it. And if both adjacent landowners occupied up to a line believing it to be the true line, but neither maintaining it against what might thereafter be discovered to be the true line, the possession of neither is adverse to the other.

6. ———: ———: ———: ———: INTERDEPENDENT DEFENSES. The title by agreement to the disputed strip of land is not dependent on continuous possession, nor is title by limitation dependent on an agreement as its inception.

7. ———: DESCRIPTION OF LAND IN VERDICT. It is not sufficient for the verdict in ejectment to refer to evidence whereby the sheriff may ascertain what the jury intended to find. The plaintiff is required to give the jury such fixed monuments or official documentary data as will enable them to describe the land that they intend him to recover with so much certainty that the sheriff, without other evidence, may execute the writ.

*Appeal from Grundy Circuit Court.*—HON. PARIS C. STEPP, Judge.

REVERSED AND REMANDED.

S. C. PRICE and H. G. ORTON for appellants.

(1) Where a landowner occupies up to a fence, and claims to such fence, his possession is adverse, even though he supposed the fence was on the true line and was mistaken in such supposition. Goltermann v. Schiermeyer, 111 Mo. 404; Handlan v. McManus, 100 Mo. 124; Battner v. Baker, 108 Mo. 311; Hamilton v. West, 63 Mo. 93; Majors v. Rice,

57 Mo. 384; Cole v. Parker, 70 Mo. 372; Blair v. Smith, 16 Mo. 282; Turner v. Baker, 64 Mo. 218. (2) Where there is a dispute as to the true division line between adjoining proprietors, or the line is uncertain, and they, being ignorant of its true location, agree upon a permanent division line, and take possession accordingly, such agreement is binding upon them and those claiming under them. Goltermann v. Schiermeyer, 111 Mo. 406; Krider v. Milner, 99 Mo. 145; Atchison v. Pease, 96 Mo. 566; Schad v. Sharp, 95 Mo. 573; Jacobs v. Moseley, 91 Mo. 457. (3) Such agreement is not within the statute of frauds. Jacobs v. Moseley, 91 Mo. 457; Atchison v. Pease, 96 Mo. 566; Blair v. Smith, 16 Mo. 273; Turner v. Baker, 64 Mo. 238. (4) Where coterminous landowners mutually establish a boundary line and build to it, and use and occupy accordingly to it, for a period long enough to show their agreement and acquiescence, they and those claiming under them will be estopped from afterwards claiming a different boundary, although such acquiescence is for a shorter period than would constitute a bar under the statute of limitations. Taylor v. Zepp, 14 Mo. 482; Blair v. Smith, 16 Mo. 273; Turner v. Baker, 64 Mo. 218; Doldc v. Vodicka, 49 Mo. 98.

Hugh C. Smith and Harber & Knight for respondent.

(1) Instruction number 4, as modified by the court, was more favorable to appellants than they were entitled to. The instruction, as given, ignored the question of open, notorious and continuous possession; otherwise it is in exact accord with instructions which have met with the approval of this court. Shotwell v. Gordon, 121 Mo. 482; Handlan v. McManus, 100 Mo. 125; Cole v. Parker, 70 Mo. 377; Atchison v. Pease, 96 Mo. 569; McWilliams v. Samuels, 123 Mo. 659. (2) A disagreement between adjoining landowners as to the true division line is a condition precedent to the establishment of a dividing line by agreement. Krider v.

Milner, 99 Mo. 145; Atchison v. Pease, 96 Mo. 566; Shad v. Sharp, 95 Mo. 573. (3) The possession, in order to sustain a verbal agreement between adjoining landowners, must be continuous whether for a sufficient time to cause the statutes of limitations to run or not. Hence in disregard thereof, the abandonment of the line, the changing of the fences, will avoid the rights of the parties to claim to the agreed time.

VALLIANT, J.—Ejectment for strip of land twenty feet wide alleged to lie along the east side of the following described lands in Grundy county which belong to plaintiff, to wit: West half of southeast quarter of section 12 and northwest quarter of the southeast quarter of section 13, in township 61 and range 21 west.

Defendants own the lands adjoining the plaintiff's on the east; and this controversy arises out of a disputed boundary between them.

The petition is in the usual form. The answer is first a general denial, then a plea of the statute of limitations, and third an agreement alleged to have been made in 1863 between defendants, then and now owning the land on the east, and one Samuel Luke then owning the land on the west, which the plaintiff now owns; that by this agreement Luke and defendants not knowing where the true line of division was, marked off and staked out a line and agreed that it should be the division line between them; that in accordance with that agreement the parties to it built a division fence on that line and each took possession and occupied on his side up to the fence; that in 1867 Luke sold his land in section 12 to one Baker who had it surveyed and found the division line to be as Luke and defendants had before agreed, and then Baker and defendants again agreed to that as the line between them, and built a fence on it; that from the time of the agreement

with Luke in 1863 to the present time defendants have been in possession of the land east of that agreed line, and that Luke and those claiming under him, including the plaintiff, acquiesced in defendant's occupancy and claim for nearly thirty years.

The reply was a general denial except admitting the ownership by plaintiff and defendants of the tracts of land respectively of which the division line is in dispute.

The plaintiff's evidence tended to prove that the true division line between the lands of the parties was from fourteen to twenty feet east of the fence that now separates them; that this was shown by a survey made by County Surveyor Brown in 1891. Defendants' evidence tended to prove the affirmative defenses set up in their answer.

The testimony also tended to show that eight or ten years after the original fence, which was a rail fence, was built, defendants planted a hedge on that line in section 13, and by permission of the then owner in order to occupy the line of the old rail fence with his hedge he moved the fence a few feet west; that subsequntly from time to time as it became necessary to replace the old with a new fence, the new portions were built at a distance of four or six feet west of the old, where the fence now stands, and only traces of the old rail fence remained when Brown made his survey in 1891; there was testimony tending to show that these changes were the result of circumstances making it more convenient to put the fence where it now is, than on the old line, and that it was done without intention to indicate a new division line.

After the testimony was all in the court gave the following instructions on behalf of the plaintiff to which defendants excepted.

"1.  The jury will disregard all evidence, if any, given by defendants of any agreement between themselves and Samuel D. Luke, or themselves and Wm. Hoit, that the fences

should be erected upon other than the true line, or that any other than the true line was agreed upon as such by them.

"2. Under the pleadings, law and evidence the finding must be for the plaintiff for the strip of .ground mentioned by the witness as being north of the branch and between the center of the place formerly occupied and the present fence, and in case the jury should find for the plaintiff for such portion of the premises only, the verdict may be in the following form: "We the jury find that at the time of the institution of this suit the defendants did and now do occupy a strip of land varying in width of from —— feet to —— feet (between the center of where the old rail fence formerly stood and where the present plank, post and wire fence now is, north of the branch mentioned by the witness), off of the east side of the northwest of the southeast quarter, and the east side of the southwest fourth of the southeast quarter of section 12, township 6, range 24, and being between the center of where the old rail fence formerly stood and where the post, plank and wire fence now is, and assess plaintiff's damage for the taking thereof at $——, and the monthly rents and profits at $——.

"3. Although some of the persons through whom plaintiff claims to derive title to the premises in question prior to the purchase thereof by plaintiff, agreed upon a line therefor and actually took possession and occupied up to said agreed line, yet if defendants abandoned the same and removed and changed their fences therefrom, they can not now plead such former agreement and possession in bar of plaintiff's claim.

"4. It is not enough to divest the real owner of the land of the title thereto that he and the adjoining owner, believing the line to be at a certain place, erect a fence and make improvements thereon, or in reference thereto, or even that such adjoining owners expressed to each other their opinion and really believe that a certain line is the true one,

but in order to bar the owner of the real title from a recovery of it, no difference how long held, what improvement may have been made thereunder by another, by reason of the statutes of limitations pleaded by defendants, it must appear to the reasonable satisfaction of the jury and by the preponderance of the evidence that said adjoining owners mutually agreed and understood that regardless of where the true or real line might be, a certain specific line should be the true and real line, and unless the defendants have so shown in this case, the verdict should be for the plaintiff for all the lands, if any, defendants occupy of his, and if the jury should find that the survey as testified to by County Surveyor Brown is correct, and that defendants occupy certain portions of plaintiff's land they can make their verdict in the following form: 'We the jury find for the plaintiff; that at the time of the institution of this suit defendants did and now do occupy of the lands, i. e. a strip of from —— feet to —— feet on the east side of the west half of the southeast quarter of section 12 and the northwest fourth of the northeast quarter of section 13, all in township 61, range 24, said strip being between the fences now upon said premises and the survey made by said Brown, and we assess plaintiff's damages for the taking and detention thereof at $——, and the monthly rents and profits at $———.''

The court also gave the following instructions on behalf of defendants:

"3.   If Samuel Luke and defendants agreed upon a line between their respective lands and built their fences accordingly upon such agreed line, and the defendants have continuously occupied all the land east of said line, then said Luke and all persons holding under him, including this plaintiff, are bound by such agreed line; and in such case it would make no difference whether or not plaintiff at the time he bought his land from Holt knew of such agreement, but he would be bound to recognize that line.

"6.   If Samuel Luke, while owner of the land west of the line in controversy, about 1863, agreed with defendants or either of them on a division line between their respective tracts of land, and afterwards the defendants and said Luke built their division fences upon such line so agreed upon, and if the jury further find from the evidence that defendants have ever since occupied the land on their side of such line and up to the same to the present time, then the said Luke and all persons deriving title to the land west of said line, including the plaintiff, are bound by said line and are not entitled to any land east of such agreed line.

"7.   The jury are further instructed that in determining the question as to whether or not the defendants or either of them and Samuel Luke did establish an agreed line between their respective tracts of land, the jury should take into consideration all the facts and circumstances in proof, and in determining whether the line had been agreed upon by the parties the jury should take into consideration the long acquiescence of the owners of the said adjacent tracts of land and if the jury find from the evidence that such line had been agreed on by defendants and said Luke, then the verdict should be for defendants as to all the land up to such agreed line.

"9.   The fact that witness Brown made a survey of the land in controversy, yet the fact of such survey does make the line located by him the true line dividing the northeast quarter of section 13 and the southeast quarter of section 12, but is only evidence tending to prove such line.   And the jury in considering his evidence as to such survey should take into account the manner in which it was made and the recognized corners on which the same was based."

The defendants requested the court to give the following instructions:

"4.   If the jury find from the evidence that for more than ten years next before the commencement of this suit

the defendants or either of them have been in the actual possession of the land up to the old fence as described by the witnesses, claiming the land up to said fence as their own, the verdict of the jury should be for defendants for all the land east of said fence." Which the court refused to give in the form offered, but gave in the following form: "If the jury find from the evidence that for more than ten years next before the commencement of this suit the defendants or either of them.have been in the actual possession of the land up to the old fence described by the witnesses, claiming the land up to said fence as their own, regardless of the true line, the verdict of the jury should be for the defendants as to all land east of said fence." To·which modification defendants excepted.

The defendants also requested the court to give to the jury the following instructions, which the court refused and defendants excepted.

"1. The jury are instructed that under the evidence in this case the verdict must be for the defendants.

"2. The court instructs the jury that the defendants make no claim to any land west of the line of the hedge and the old rail fence mentioned by the witnesses. And the plaintiff can not recover in this action by reason of any of the land west of said line being on the east side of the fence built by plaintiff for Holt or by Holt himself.

"5. The jury are instructed that if for the period from 1863 the defendants or either of them have been in the possession of the land east of the hedge and the old rail fence, claiming to hold such land as their own, then the verdict of the jury must be for the defendants for all the land east of said rail and hedge fence.

"8. The jury are further instructed that by a long occupation by adjacent landowners to a line between their respective tracts and for a period of more than twenty-five

years, the law raises a strong presumption that they have agreed on such a line as the true line dividing their possessions; and if the jury find from the evidence in this case that the defendants have, since about 1863, occupied the land up to the line of the old fence, then the law presumes that such line is an agreed line between them and the adjoining owners, and it would devolve on the plaintiff to rebut such presumption by satisfactory evidence to the contrary.

"10. If the defendants made valuable improvements on the land in controversy by planting hedge on the same as a dividing line, and by planting fruit trees on the same believing at the time that they were on their land, and if the jury find that the owners of the land west of said line knew that defendants were making such improvements and made no objection thereto, then such owners and all subsequent owners claiming from him are estopped from claiming the land on which the improvements were made.

"11. Although the jury should find that there is a strip of land from four to six feet wide north of the road between the fence as now located and the center of the old rail fence, yet if a part of said fence as now located was built by Holt west of said old fence, and the defendants have never claimed said land west of said old rail fence and never denied to plaintiff the possession of said strip, then the verdict must be for defendants as to said strip of land as not having been detained by defendants from plaintiff. And the mere fact that the said strip is within defendants' inclosure is not sufficient to entitle plaintiff to maintain this suit unless defendants have in some way denied to plaintiff the possession thereof."

The jury returned into court the following verdict: "Trenton, Grundy Co., Mo., April 24th, 1896. We the jury find for the plaintiff; that at the time of the institution of this suit defendants did and now do occupy of the lands, i. e. a strip of land belonging to plaintiff, varying in width, situated between the fence now standing and Brown's survey,

the same being on the east side of the west half of the south-east quarter of sec. 12 and the northwest fourth of the north-west fourth of sec. 13, all in Township 61, Range 24. And we assess plaintiff's damages for the taking and detention thereof at the sum of three dollars, and total rents and profits at the sum of two dollars.              Z. B. Ford, Foreman."

Defendants filed motions for new trial and in arrest in due time, which were overruled and bill of exceptions filed, and the cause comes here on appeal.

The judgment here will rest on the question of whether or not the instructions given and refused were properly so treated by the trial court.

I.   The defendants in their answer plead two affirmative defenses, viz.:   An agreement establishing the division line, and the statute of limitations.   These two defenses must not be confused, for each is independent of the other and rests on its own foundation.   If the agreement is proven according to the rules of law governing it, it is a good defense even though possession under it has not been held for the period prescribed by the statute of limitations; and if posses-sion has been held under the circumstances, and for the period prescribed by the statute, the law will not suffer it to be disturbed even though there was no agreement in its be-ginning.

The law governing agreements of this kind has been so clearly laid down in an early decision of this court speaking through RYLAND, J., that we can not do better than quote it here:   "It is competent for two such proprietors to agree what shall be the division line; and when using and occupy-ing up to such a marked line as this, such use and occupancy shall be considered and deemed evidence that such line was agreed to be the division by and between the owners.   The statute of frauds does not touch such a case as this.   Here there is no sale of the land to either party.   There is no con-

sideration passing from one to the other; it is not a contract either of buying or selling land from one to the other. They own adjacent lots—contiguous lots; they agree that such a marked line shall be the dividing line between the lots which they own; and they use and occupy the respective lots up to this line, not for twenty years, not for fifteen years, but for a length of time sufficient to show the understanding and the intention of themselves—to show that they know their own boundary, that they are content with their own boundary. We consider this case thus: Two owners of contiguous lots or tracts of land, each having his deed for his lot or tract, agree with each other: 'We fix this mark on the earth's surface as the line called for in my deed—this mark as the line called for in your deed; here is the line between us. My land mentioned in my deed, comes up to this mark, or this fence, or this wall, on this side, and your land comes to the same, on that side.' They use and possess and occupy their respective lots to this mark. Now, this use and occupancy, without disturbance, for a time long enough for men to show that they know the boundary between their lands, shall be considered binding and conclusive as to such boundary, as well as of such understanding or agreement between them. They shall not, after a lapse of years, longer or shorter, as the circumstances may tend to show their agreement or settlement or the fixing of their common boundary, be permitted afterwards to dispute it. Such boundary, thus agreed upon, shall be considered the true one; and each one considered as the owner of the land mentioned in his deed thus marked out to that boundary between them." [Blair v. Smith, 16 Mo. 273.]

The law as there defined has been so declared by this court in several cases since, and is the settled law of this State. [Turner v. Baker, 64 Mo. 218; Jacobs v. Moseley, 91 Mo. 457; Schad v. Sharp, 95 Mo. 573; Atchison v. Pease, 96 Mo. 566; Krider v. Milner, 99 Mo. 145.]

The possession and use up to the line by the adjacent property owners respectively are important facts in such a case, for two reasons: First, it is the concession that each makes to the other and in that sense is the consideration of the agreement; the one says to the other: "Although monuments that we now know nothing of may hereafter be uncovered and show that I am entitled to a broader boundary, yet since it may also show that the broader field would be yours, now I concede to you the advantage that would come to me in the one case, and you concede to me the advantage that would be yours in the other case, and for that mutual consideration we draw the line here." Then when the line is drawn and the possession is taken the deed is accomplished, and each owns up to the line as fully as if it were a natural boundary and their respective deeds called for it. Second, such possession and use are evidence that there was an agreement to establish the line; not only to corroborate other evidence of such an agreement, but even if there be no other such evidence. [Turner v. Baker, *supra;* Jacobs v. Moseley, *supra.*] There is no definite period prescribed for the duration of such possession for this purpose. It is only necessary that it continue long enough to indicate that the adjacent landowners so understood it.

On the other hand when a party relies on the statute of limitations to fix his boundary line he need not show an agreement, but he must show that he has held possession up to the line for the period prescribed by the statute; that he has claimed it as his line against the world without condition as to subsequent developments. If the circumstances show that he claimed the line believing it to be the true boundary, but subject to correction as the fact might afterwards develop, then no matter how long he thus held it he would acquire no title beyond his true line. But if he claimed it against all comers to be the true line, and held it for the period prescribed by the statute, it became his against the world. And

if the adjacent property owners each occupied up to a line both believing it to be the true line but neither so maintaining it against what might thereafter be discovered to be the true line, the possession of neither is adverse to the other. The character of the occupancy in either of these supposed cases is to be determined not only from what the parties while occupying said about it, but their acts and the surrounding circumstances. [Atchison v. Pease, *supra;* Krider v. Milner, *supra;* Goltermann v. Schiermeyer, 111 Mo. 404; Shotwell v. Gordon, 121 Mo. 482.]

II. Applying the law as above shown to the case at bar it will be seen that the third instruction given at the request of the plaintiff is erroneous. That instruction carries the idea that although the line was agreed upon in 1863 by the then adjacent owners, and they built their division fence on it, and the land up to that line on each side was taken possession of and occupied by the property owners respectively, yet if the defendants ever thereafter moved their fences from it they abandoned it and lost whatever rights they may have acquired under the agreement.

If there was such an agreement as defendants' evidence tended to prove and if the division line became an accomplished fact by both parties taking possession and occupying according to its demarcation, then defendants' title to that line vested and they were no more required to keep up their fence on that line to protect their title to it than to keep up a fence on any other part of their land to enable them to hold their own. The decay of the fence, its removal, its shifting, were all proper facts in evidence as bearing on the question of whether or not it was built as defendants claim it was in pursuance to the alleged agreement; but the agreement once established, possession of both sides under it and their rights having become fixed, the decay, removal and shifting of the fence had no effect on defendants' title.

The fence as finally reconstructed, shifted from four to

six feet to the west on plaintiff's land, but the plaintiff's rights under that agreement, if there was such an agreement, were not affected by that shifting; he could recover possession to the old rail fence at any time unless there was something else to preclude him. And defendants' rights were equally secure.

The fourth instruction given for the plaintiff is also a misconception of the law. Under that instruction although defendants may have been in adverse possession up to the old fence for ten years or more yet unless the possession began under an agreement between the then owners of the land that that should be the division line between them regardless of where the true line might afterwards be found to be, the statute of limitations was of no avail.

The giving of these two instructions shows that the court confounded the two defenses pleaded by defendants, holding that the title by the agreement depended on   continuous possession and the title by limitation depended on the agreement in its inception.

III. The only serious error in the giving and refusing of the instructions was in the giving of instructions numbered 3 and 4 for plaintiff as above stated. But some of the other instructions are subject to criticism for their forms of expression; and as the cause is to be retried we will call attention to them. The first instruction given for plaintiff was doubtless intended to withdraw from the jury any evidence that may have fallen from the lips of the defendants themselves as witnesses touching the alleged express agreement between themselves and Luke, and also what passed between them and Holt, because these two persons were dead. If there was any such evidence that went in against plaintiff's objection, or before they had opportunity to object, the court should have withdrawn it by an apt instruction. But this instruction is so worded that it is liable to be construed to include any evidence on that point by other witnesses in

behalf of defendants. Besides if there is any evidence of that kind from defendants themselves we have not perceived it, and if there was none the instruction was misleading.

In modifying the fourth instruction asked by defendant the court had the correct idea in its mind, but did not express it with sufficient clearness to bring it within the understanding of the jury. We have seen from the decisions above cited that the difference between claiming to a line subject to correction and claiming to it absolutely has called forth elucidations from learned judges, and it is a subject in which a jury should not be left to grope. The defendants' instruction as asked was a correct statement of the law as far as it went, but, as the learned trial judge rightly considered, it was liable to misconstruction under the circumstances, and therefore should have been qualified. The instruction should have been given in the form as asked, and then the court should have prevented its misconstruction by adding in effect that in order to find that defendants claimed up to the fence within the meaning of that instruction, they should be satisfied from the evidence that their claim was not conditioned on the fence being on the true line as subsequent developments would show, but a positive claim to the fence as the true line.

The fifth instruction asked by defendants is of the same character and should be treated in the same manner.

The first, second, eighth, tenth and eleventh instructions asked by defendants were properly refused. The facts referred to in the eighth and tenth instructions were properly in evidence, and were facts to be considered by the jury as bearing on the question of whether or not there was an agreement as claimed by defendants and what was done under it; but the weight to be given to those facts as evidence was within the province of the jury.

The evidence shows without contradiction that from the date of the building of the old fence in 1863 to the present

time defendants have been in the possession of the land up to that fence. But it also shows that since the building of the new fence a strip of four to six feet in width of plaintiff's land is in defendants' inclosure. But the evidence tends to show that that resulted from a rather careless yielding of the parties, including plaintiff and defendants, to the physical conditions of the land, than from a purpose to change the line. Defendants' second and eleventh instructions were on the theory that as they had never made any claim to that strip between the old and the new fence plaintiff was not entitled to a verdict on that account for that much. But those instructions were rightly refused. Because although defendants in their evidence showed they made no claim to that strip, yet in their answer they claimed all the land sued for, and put the plaintiff to his proof. If defendants in their answer had disclaimed that strip then, unless plaintiff at the trial could have proven that defendants had withheld it from him, he could not have recovered at defendants' cost.

IV. There is one other error to be guarded against on the retrial of this case, if the verdict should be for the plaintiff.

The judgment must follow the verdict, and the writ of possession must follow the judgment. Therefore the verdict must so describe the land which the plaintiff recovers, as that the description alone will show the sheriff exactly what he is to take from defendants and give to plaintiff. It is not sufficient to refer to evidence whereby the sheriff may ascertain what the jury intended to find but failed to express. And the burden is on the plaintiff to give the jury such fixed monuments or official documentary data as will enable them to describe the land they intend him to recover with so much certainty that the sheriff, without other evidence, may execute the writ. The jury's verdict in this case described the land plaintiff was to recover as "a strip of land belonging to

plaintiff, varying in width, situated between the fence now standing and Brown's survey, the same being on the east side of," etc., describing plaintiff's tract of land by the Government numbers. The reference to the fence now standing on the land is a sufficient designation of one side of the strip, but "Brown's survey" is too indefinite and "varying width" is too indefinite.

The judgment of the circuit court is reversed and the cause remanded to be retried in accordance with the law as herein expressed. All concur, except MARSHALL, J., absent.