C. M. COURTNER v. H. W. PUTNAM and ANNA PUTNAM, Appellants. —30 S. W. (2d) 126.

Division One, July 9, 1930.

*Howard Gray* for appellants.

*Lincoln & Lincoln* for respondents.

SEDDON, C.—Action in ejectment, commenced at the May, 1926, term of the Greene County Circuit Court. The petition is in the conventional form, the plaintiff (respondent here) alleging that, on the sixth day of May, 1926, he was entitled to the possession of all

of Lot 16 of W. B. Searcy's Addition to the city of Republic, Greene County, Missouri; that the defendants (appellants here), on the seventh day of May, 1926, entered upon the described premises and are unlawfully withholding from the plaintiff the possession thereof, to plaintiff's damage in the sum of $100, and that the value of the monthly rents and profits of the described premises is ten dollars. Plaintiff, by his petition, prays judgment for the recovery of possession of the described premises, together with damages and monthly rents until possession of the described premises is restored and delivered to plaintiff.

The answer denies generally the allegations of the petition, and avers that defendants are the owners of the described premises and that plaintiff has no interest therein.

A trial of the issues to the court below, sitting as a jury (trial by jury being waived by the parties), resulted in a general finding by the court that plaintiff is entitled to the possession of the described premises, being all of Lot 16 of W. B. Searcy's Addition to the city of Republic, Missouri; that plaintiff is damaged in the sum of $25 because of the withholding of possession of said premises by the defendants; and that the value of the monthly rents for the use of said premises is two dollars; wherefore, it was adjudged by the trial court that plaintiff have and recover of and from the defendants the possession of the described premises, together with the sum of two dollars per month, as rents, from the date of said judgment until possession of the premises be restored to plaintiff, and that plaintiff recover $25 damages and the costs of suit, and that process issue therefor.

No instructions or declarations of law were requested by either of the parties to the action, and none was given by the trial court. The findings of the trial court are general, and are set forth, as aforesaid, in the judgment.

Upon the overruling of defendants' motion for a new trial, the defendants were allowed an appeal to this court from the judgment entered in the trial court.

The evidence discloses that plaintiff and defendants are the proprietors of adjacent lands, and the controversy between the parties has relation to the boundary line between their respective lands. The record title to the land in controversy, Lot 16 of W. B. Searcy's Addition to the city of Republic, in Greene county, Missouri, stands in the name of the plaintiff (respondent), C. M. Courtner. On May 6, 1925, the plaintiff-respondent, C. M. Courtner, purchased from T. R. Wallace, and the latter conveyed, by proper deed, to plaintiff-respondent, all of Lots 16, 17 and 18, of W. B. Searcy's Addition to the city of Republic. The three lots aforesaid are numbered from

west to east, Lot 16 being the westerly of the three lots, Lot 17 being the middle lot, and Lot 18 being the easterly of the three lots. Adjoining Lot 16 on the west is an unplatted tract of land, described by metes and bounds. The defendants (appellants), H. W. Putnam and Anna Putnam, are the record owners of said unplatted tract of land, having acquired the record title thereto from the O'Neal Lumber & Coal Company by general warranty deed, dated May 23, 1923. The common source of title to Lots 16, 17 and 18, of W. B. Searcy's Addition, and to the unplatted tract of land adjoining said Lot 16 on the west, was George W. O'Neal. In the year 1910, George W. O'Neal, by deed of gift, conveyed all of Lots 16, 17 and 18, of W. B. Searcy's Addition, to his daughter, Myrtle Robertson, wife of Sherman Robertson. In the same year, 1910, George W. O'Neal conveyed the unplatted land on the west of, and adjoining, Lot 16, to O'Neal Lumber & Coal Company, which seemingly was an incorporated entity, owned and controlled by George W. O'Neal and his son-in-law, Sherman Robertson, the latter owning a one-fourth interest in the said corporation. Prior to the year 1910, and while the platted lots and the unplatted land were owned and possessed by said George W. O'Neal, he built a wooden fence, extending from north to south, across the lands, which then constituted a single and undivided tract or parcel. The record herein does not show the purpose and intention of George W. O'Neal in erecting said wooden fence, but presumably the fence was erected to serve some personal use or convenience of the said George W. O'Neal, while he was the sole owner of both the platted and the unplatted lands. The fence was erected by George W. O'Neal some years prior to 1910, but the exact date when the fence was originally erected is not disclosed by the record herein. Neither does the record disclose that George W. O'Neal erected the fence with any intention or purpose that the fence was to be, or to constitute, the dividing line, or monument, between the platted lots and the unplatted land, all of which lands were then owned and possessed by George W. O'Neal as a single and undivided parcel of land. After the conveyance (in 1910) of Lots 16, 17 and 18, of W. B. Searcy's Addition, by George W. O'Neal, to his daughter, Myrtle Robertson, the daughter and her husband, Sherman Robertson, erected a dwelling house and a barn on Lot 17, the middle one of the three platted lots, in which dwelling house they resided until some time in the year 1923, when Myrtle Robertson conveyed all of said Lots 16, 17 and 18, of W. B. Searcy's Addition, to T. R. Wallace, who resided in the dwelling house on Lot 17 for about two years, and until May 6, 1925, on which date T. R. Wallace sold and conveyed the whole of the three platted lots to the plaintiff-respondent, C. M. Courtner.

After his purchase of the three platted lots, the plaintiff-respondent, Courtner, caused a survey of the platted lots to be made on September 15, 1925, by the County Surveyor of Greene County, which survey shows the whole of Lot 16, and (perhaps) the west 3½ or 4 feet of Lot 17 (the middle one of the three platted lots), as lying west of the line or location of the fence originally erected by George W. O'Neal, while the latter was the sole owner of both the platted lots and the unplatted land.

Plaintiff-respondent, C. M. Courtner, testified on the trial of the instant ejectment action: "I am the owner of Lot 16, in W. B. Searcy's Addition to the city of Republic. I purchased the same on May 6, 1925, from T. R. Wallace, who was the (then) owner. At that time, I purchased Lots 16, 17 and 18. Since that time I have conveyed Lots 17 and 18, but not Lot 16. After I purchased Lot 16, I discovered it was occupied by lumber being piled on it, and I had it surveyed. The lumber is still on the lot. I requested them (defendants) to remove it, but they have not. . . . When I purchased the property I understood (each of) the lots to be 62½ feet wide and 208 feet deep." Cross-examination: "When I purchased the lots I went out there and looked them over. I saw where the lumber was piled. I also saw the fence on the east (west?) side. At that time I didn't know that Lot 16 was inside of that fence. I was buying three lots, practically an acre of ground. I did not know how far the lots extended on each side of the house. Whether the three lots were east of the lumber yard fence, I did not give serious consideration. I saw the property at night, and did not step off the ground. I thought I was buying 187½ feet. Shortly after I purchased the land I found the fence was on Lot 16. I learned this when I went to find where my ground was. . . . The fence is perhaps three and one-half or four feet over on Lot 17. The house and barn are built on Lot 17. Mr. Robertson was living on Lot 17 in 1923, and then Mr. Wallace moved in." Plaintiff testified that the rental value of Lot 16 is $10 per month.

Sherman Robertson, husband of Myrtle Robertson, testified: "I owned the property in controversy. I lived on Lot 17 at the time I sold the Lumber Company property to Putnam (defendant). At that time lumber was stacked on the property west of the fence, and it was put there as a part of the lumber business. At the time I made my deed to the Putnams, so far as I ever knew, the property line of the O'Neal Lumber & Coal Company was that fence on the east side. I built that fence there myself, or had it built, about thirteen years ago. Prior to that time there was an old wooden fence, which we tore down, and put up a woven wire fence. . . .

That (original) fence has been there from fifteen to twenty years. George W. O'Neal was my father-in-law. He owned this property until 1910, which included Lots 16, 17 and 18, and also the lumber yard. About 1910 the property was split up, and he sold these three (platted) lots to my wife. The fence was on the property at the time he deeded the property, and had been for some years before that. The best of my knowledge is he built the fence when he owned all the property. From the time he made a deed to the Lumber Company that company took possession of the same property that is now occupied by the Lumber Company. The Lumber Company was put into possession of the lot out to that fence. So far as we knew, we always regarded that fence as being the line. Mr. O'Neal gave that property (the three platted lots) to my wife, and we assumed the fence was on the line. I had a fourth interest in the lumber yard, and my wife owned that property (the three platted lots), and so far as I knew the line of that fence was the property line. We (O'Neal Lumber & Coal Company) didn't mean to claim any property that wasn't covered by our deeds. We did not mean to encroach on my wife's property."

In his brief, and seemingly by way of an additional abstract, the respondent (plaintiff) has set out a portion of the testimony of the witness, Sherman Robertson, as contained in the bill of exceptions, as follows: "Q. When you (O'Neal Lumber & Coal Company) made your deed here to the Putnams (defendants), you may tell the court whether or not you regarded the line of the lumber yard as being the east line of the lumber yard fence? A. Why, so far as I ever knew, the property line of the O'Neal Lumber & Coal Company was that fence on the east side. (By the Court): Q. What did you think about that fence as to being on the correct line? A. As far as we knew, we always regarded that fence as being the line. Mr. O'Neal gave that property (the platted lots) to my wife. Q. You just assumed the fence was on the true line? A. Yes, sir. Q. You say you never had the line surveyed? A. No. Q. You didn't know where it was; you were not claiming, nor do you intend to claim now, any of Myrtle Robertson's property? A. No, sir. Q. You (O'Neal Lumber & Coal Company) were simply claiming to where the true line was; was that your intention? A. I had a fourth interest in the lumber yard there; my wife owned that property (the platted lots), and so far as I knew the line of that fence was the property line. Q. You were claiming to it because you thought it was the true line? A. Just simply assumed that; we didn't know; we always understood that. (By the Court): In other words, you (O'Neal Lumber & Coal Company) didn't mean to claim any property that wasn't covered by your deed, just because the fence was

there? A. No. Q. You didn't mean to encroach on your wife's property? A. No."

The witness, T. R. Wallace, testified: "I am the Wallace who lived on the Lots 16, 17 and 18. I lived on the property a couple of years. During all of that time, while I had a deed to Lots 16, 17 and 18, we treated and considered that fence on the west side to be the west line of our property. We looked at the property before we purchased it, and that fence was there then. We always treated it as the dividing line between our property and the property of the Lumber Yard Company. I bought three lots, and understood they were sixty-two and one-half feet wide each. I never measured it, but considered I owned three lots."

The defendant, H. W. Putnam, testified: "At the time I purchased the (unplatted) property, Robertson was living on Lot 17. Mrs. Robertson was the daughter of George O'Neal. When I purchased the (unplatted) property, I got an abstract and deed, and took them over to Judge Gray's office, to be examined. It (the unplatted property) was described by metes and bounds, and he (Judge Gray) told me that the abstract was all right, but I had better have a survey made, or have Mr. Robertson, the man who was selling the property to me, to show me the dividing line. I knew Mr. Robertson, and I thought it would be better to have him show me the lines. He showed me the property which is under fence, and the fence on the east side was the line between the properties. I took possession of the property, and the first knowledge I had that we had anybody else's property was when I was notified to get off. The fence he showed me as the east boundary line (of the unplatted land) is this fence on Lot 16. I have been in possession of the property up to that fence ever since I purchased it. I purchased the property in 1923, and have been in possession ever since. At the time I purchased it, Mr. Robertson was in possession. I did not know how many feet frontage I was getting. It was described just by links and chains, and when my attorney examined the title, he said the amount I was buying was shown in the boundaries. When I said Mr. Robertson was in possession of the lumber yard property when I bought it, I meant the O'Neal Lumber & Coal Company."

The foregoing was all of the evidence adduced on the trial, as shown by the abstracts of record before us on the instant appeal.

The instant action is purely one at law, and was tried to the court below without the aid or intervention of a jury. The cause comes before this court, on appeal, without any declarations of law having been asked by the parties below, or given by the trial court. Therefore, the findings of fact by the trial court (as embodied in the judgment *nisi*) stand in this court in the same situation as does the ver-

dict of a jury; that is to say, if there is any substantial evidence to support the findings of the trial court, such findings of the court below are conclusive upon this court, and this court will not disturb such findings upon appeal. [Ware v. Cheek (Mo. Sup.), 201 S. W. 847, 849; Bingham v. Edmonds (Mo. Sup.), 210 S. W. 885, 886; Martin v. Hays (Mo. Sup.), 228 S. W. 741, 744.] The appellants recognize the foregoing to be the established and uniform practice of this court in a law case, wherein trial is had before the court below, sitting as a jury, without declarations of law having been asked or given; therefore, the appellants contend, by their assignments of error, that the evidence herein is not sufficiently substantial to support the findings and judgment of the trial court.

In support of their contention, appellants rely upon the doctrine or rule of law announced by this court in Cole v. Parker, 70 Mo. 272, 379; Battner v. Baker, 108 Mo. 311, 315; Goltermann v. Schiermeyer, 111 Mo. 404, 418; Hedges v. Pollard, 149 Mo. 216, 225; Lemmons v. McKinney, 162 Mo. 525, 531; Bartlett v. Boyd, 175 S. W. 947, 949; and Nichols v. Tallman, 189 S. W. 1184, 1185. The doctrine of law announced in the aforecited cases, and relied upon by the appellants herein, is thus stated: ''Where one of two adjoining land proprietors takes and holds possession up to a fence which he supposes is on the true line *claiming to the fence,* his possession is adverse as to all the land within his inclosure. In such case it makes no difference that he was mistaken as to the location of the true line; nor does it make any difference that he did not intend to invade his neighbor's rights. The fact that he *claimed to the fence,* not simply to the true line when ascertained, is sufficient and will constitute a disseizin.'' [Goltermann v. Schiermeyer, 111 Mo. l. c. 418, 419.] Or, as differently stated in Cole v. Parker, supra, ''if any one, by mistake, inclose the land of another *and claim it as his own,* his actual possession will work a disseizin; but, if ignorant of the boundary line, he makes a mistake in laying his fence, *making no claim, however, to the land to the fence,* but only to the true line as it may be subsequently ascertained, his possession is not adverse.'' (Italics ours.)

The respondent, on the other hand, contends that the findings and judgment of the trial court are supported by substantial evidence, and that the judgment *nisi* should be affirmed in conformance with the doctrine of law announced by this court in Jacobs v. Moseley, 91 Mo. 457, 462; Schad v. Sharp, 95 Mo. 573, 578; Krider v. Milner, 99 Mo. 145, 149; Skinker v. Haagsma, 99 Mo. 208, 215; McWilliams v. Samuel, 123 Mo. 659, 662; Brummell v. Harris, 148 Mo. 430, 443; Foard v. McAnnelly, 215 Mo. 371, 393; Ackerman v. Ryder, 308 Mo. 9, 25; and Ware v. Cheek (Mo. Sup.), 201 S. W.

847, 849. The doctrine of law announced in the cases last cited, and contended for by the respondent herein, is thus stated: "When (the lands of) two adjoining proprietors are divided by a fence which they suppose to be the true line, each claiming only to the true line, they are not bound by the supposed line, but must conform to the true line when ascertained. Their possession under mistake or ignorance of the true line dividing their premises, and without intending to claim beyond the true line when discovered, will not work a disseisin in favor of either party." [Schad v. Sharp, 95 Mo. l. c. 578.]

The line of demarcation or distinction between the two rules or doctrines of law aforestated (that is to say, the distinction between the one doctrine, contended for by appellants, and the other doctrine, contended for by respondent) lies in the fact (as determinable from the evidence in any case wherein a disputed boundary line is marked by a fence between contiguous lands) whether the party in possession of the land in controversy claims ownership of the land only to the true line, wherever that might be, or whether such party claims ownership of the land to the fence. [Foard v. McAnnelly, 215 Mo. l. c. 393; Battner v. Baker, 108 Mo. l. c. 315.]

Having in mind the two doctrines of law aforesaid, as contended for by the respective parties herein, and the line of demarcation or distinction between those two doctrines of law, as just stated by us, is the evidence herein sufficiently substantial to support the findings and judgment of the court below? The evidence is uncontroverted that the respondent, C. M. Courtner, holds a good record title to the land in controversy, described as Lot 16 of W. B. Searcy's Addition to the city of Republic. There is no evidence herein that the unplatted land (which is described by metes and bounds, and to which the appellants hold a good record title) overlaps the platted Lot 16. That is to say, there is no evidence in the record before us that there is an actual shortage of area, either in Lot 16, as platted and conveyed to respondent, or in the unplatted land, as laid out by metes and bounds, according to the description of said unplatted land as contained in the deed of conveyance from O'Neal Lumber & Coal Company to the appellants. In other words, the appellants and respondent, by their respective deeds, acquired the record title to the precise land described in their respective deeds, and neither tract of land (as described in the deed conveying the same) overlaps the other. Such being the evidential fact, the only defense available to the appellants, in bar of respondent's ejectment action, is adverse possession of the land in controversy by appellants and their grantor, O'Neal Lumber & Coal Company, for ten (or more) years prior to the commencement of the instant ejectment action. Al-

though the answer of appellants herein does not specially plead the ten-year Statute of Limitation in bar of respondent's action in ejectment, it repeatedly has been stated by this court that "the law is well settled in this State that, where that lapse of time has occurred which, by the Statute of Limitations, is fixed for the creation of an estate by adverse possession, the statute need not be specially pleaded, but may be relied on under a general denial;" and, in an ejectment action, proof of adverse possession may be made under a general denial. [Carson v. Lumber Co., 270 Mo. 238, 245; Hedges v. Pollard, 149 Mo. 216, 223; Bird v. Sellers, 113 Mo. 580, 588.]

Have the appellants made proof of adverse possession of the land in controversy for the period of time (ten years) prescribed by the Statute of Limitation, so as to vest title thereto in appellants? The record before us answers the question in the negative. We have set forth in this opinion the entire evidence bearing upon that question. The evidence shows that George W. O'Neal, while he was the sole owner of both the platted lots and the unplatted land (which were held by him as a single tract or parcel), erected a wooden fence across the lands. There is no evidence herein that George W. O'Neal erected the fence with the intention or purpose that the fence was to be, and to constitute, the dividing line, or monument, between the platted lots and the unplatted land; the logical inference to be drawn from the evidence is rather to the effect that the fence was erected to serve some personal use or convenience of George W. O'Neal, the then owner of all the lands, platted and unplatted. The fence extended across the lands in 1910, when George W. O'Neal conveyed the platted lots to his daughter, Myrtle Robertson, the respondent's predecessor in title, and when he conveyed the unplatted land to the O'Neal Lumber & Coal Company, the appellants' predecessor in title. In neither of the deeds of conveyance so made by George W. O'Neal (so far as the record discloses) is the fence mentioned as the dividing line, or monument, between the platted lots and the unplatted land conveyed by those respective deeds. It is true that the evidence shows that Myrtle Robertson and the O'Neal Lumber & Coal Company, in the year 1910, took possession of their respective lands to the line of the original wooden fence, which each owner mistakenly *supposed and assumed* to be located on the true boundary line between their respective lands. Sometime thereafter, the original wooden fence was torn down, and a woven wire fence was erected along the line of the old wooden fence, originally erected by George W. O'Neal. There is not a scintilla of evidence that Myrtle Robertson (the former owner of the platted lots, and the respondent's predecessor in title) maintained or repaired any part of the original wooden fence, or any part of the woven wire fence that was later

erected. There is not the slightest evidence of an agreement, express or implied, between the owners of the adjoining lands, that the fence should constitute the boundary line between their respective lands. Neither does the evidence establish that the O'Neal Lumber & Coal Company, the appellants' grantor and predecessor in title, *claimed title or ownership* to the land in controversy, lying west of the fence. The most that the evidence can be said to establish is that, for fifteen or more years prior to the commencement of the instant ejectment action, there had been a fence along the line of the present and existing fence; that the land in controversy is on the appellants' side of the fence; and that the respective owners of the adjacent lands have each mistakenly *supposed or assumed* that the fence was on the true boundary, or division, line between their respective lands. The evidence, therefore, is insufficient to establish such *adverse* possession of the land in controversy as will confer title upon the appellants by limitation or prescription, or as will constitute or work a disseizin in favor of appellants and against the respondent. [Ackerman v. Ryder, 308 Mo. 9, 28; Stevenson v. Black, 168 Mo. 549, 560; Brummell v. Harris, 148 Mo. 430, 442; Ware v. Cheek (Mo. Sup.), 201 S. W. 847, 849.]

In Ware v. Cheek, supra, an ejectment action, this Division of this court said: "For the plaintiff the record shows: (1) A good paper title of Outlot 42 in the plaintiff; and (2) that the strip of ground in dispute is and was a part of such Outlot 42. These facts the court was practically forced to find under the record. With these findings for the plaintiff, the pleadings left but one open door for an escape by the defendant, i. e., adverse possession for ten or more years. Does the evidence show such *adverse possession?* We think not. The most that the evidence shows is that for twenty-five years there had been a fence just where the fence is now, and that this disputed ground is on defendant's side of the fence. This does not suffice to show such *adverse* possession as will make *title*. It might tend to show possession, but *mere possession for the statutory period is not sufficient.* The possession must be accompanied by a *claim to the title,* or at least (by) acts tantamount to a claim of title. As said in Stevenson v. Black, 168 Mo. l. c. 560, 68 S. W. 909: 'Claim to ownership is essential to give to the possession an adverse character.' . . . The mere showing of possession alone is not sufficient to call into play the rule now under discussion. The very basis of a title by limitation is a *claim of ownership* for the statutory period. . . . Possession *without claim of title* will not suffice to shift the burden to plaintiff within the rule last named." (Italics ours.)

While the evidence herein shows possession of the land in controversy by appellants and their predecessor in title, O'Neal Lumber & Coal Company, for more than ten years prior to the commencement of the instant ejectment action, there is no clear or substantial evidence herein that the possession of the O'Neal Lumber & Coal Company, appellants' predecessor in title, was accompanied by a *claim of title or ownership* to the land in controversy, extending to the line of the fence. On the contrary, the trial court may reasonably have deduced and found from the evidence that the O'Neal Lumber & Coal Company, appellants' grantor and predecessor in title, was in possession of the land in controversy, Lot 16 of W. B. Searcy's Addition to the city of Republic, under mistake or ignorance of the true boundary, or dividing, line between said Lot 16 and its own (unplatted) land, without intending to *claim title or ownership* beyond the true dividing line, wherever that true line might be. Under such warrantable deduction and finding of the trial court, the possession of O'Neal Lumber & Coal Company was not *adverse* to respondent and his predecessors in title, so as to work a disseizin against respondent, or his predecessors in title, Myrtle Robertson and T. R. Wallace. Excluding from the statutory period of limitation the period of possession of the disputed land by O'Neal Lumber & Coal Company, appellants' grantor and predecessor in title, it is obvious that appellants' own occupancy and possession of the disputed land (if the appellants' possession may be deemed to be *adverse* to respondent) is not for a sufficient length of time to confer title by limitation upon the appellants, for the record discloses that appellants did not acquire the record title to the unplatted land from O'Neal Lumber & Coal Company, or themselves take possession of the land in controversy, until May 23, 1923, only three years prior to the commencement of the instant ejectment action, which period of possession by appellants falls short of the ten years prescribed by the Statute of Limitations.

We are of opinion that the findings and judgment of the circuit court are supported by substantial evidence, and therefore the findings and judgment of the circuit court in the instant law action (which was tried to the court below, sitting as a jury, without a request for, or the giving of, declarations of law) are conclusive upon this court, for this court cannot weigh the evidence in a law action. The only assignments of error made by the appellants herein (two in number) are directed solely to the question of the sufficiency of the evidence to support the findings and judgment of the court below.

It follows that the judgment of the circuit court must be affirmed, and it is so ordered. *Lindsay* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.