OPINION of the Court, by
Judge Logas.
Corn, the complainant in the court below, exhibited his bill in chancery to recover land upon the following claim, viz, “ George Corn, by Solomon Corn, this clay claimed a pre-emption of 1000 acres of land in the district of Kentucky, on account of marking and improving the same in the year 1775, lying about one mile from the White Oak spring, about a north-west course from the same, on the head of a dry branch, to include his im- ' provement. Satisfactory proof being, made to the court, they are of opinion, that the said Corn has aright to. a pre-emption of 1000 acres of land, to include the ⅛- *125 provcmcnt, and that a certificate issue accordingly. April tilth, 1780.”
Agreement be® tween holders of entries to abide by dividing line* is within the ña-tute of frauds and perjuries* and muse be preved by w» .. ten evidences
On the l.lut of October, 1781, the following entry was made upon a pre-emption warrant obtained iu virtue of the said certificate: “ John Swann, assignee of George Coro, enters 1000 acres upon a pre-emption warrant, No. 133'J, lying on the waters of Cane run, to adjoin the lands of John Smith on the cast, and to include the improvements the said Corn now lives on, and to adjoin the White Oak spring.”
And on the 2d oí October, 1782, the said entry was amended as follows, viz. “ Elizabeth Swann, and George Corn, oiler the following amendment to John: Swann’s, deceased, entry oí 1000 acres upon a pre-emption warrant, No. 1339, to adjoin Gresham’s settlement ot 400 acres on the eastwardiy side, and Gordon’s settlement on the south and east ; to begin at the southwest corner oí Gordon’s land in said Gresham’s line, thence with Gordon’s line east to his south-east corner of settlement, thence with said settlement line north, thence east so far as will include the quantity by including the improvements the said Swann and Com now live in.”
The complainant also alleges an agreement to divide the land in controversy, by aline to be run half way between the improvements of the adversary claims.
Upon this agreement, the circuit court decreed in favor of the complainant. It is therefore thought proper to examine, first, this branch of the cause.
The evidence in the cause proves some conversations between Corn, the appellee, and Robinson, under whom the appellants claim, relative toa compromise, in which both expressed a willingness to settle on a half way-point between their improvements.
Without deciding whether the proof supports the agreement alleged, the attention of the court is more properly drawn to the legal efficacy of such a contract under the statute of frauds and perjuries. The agreement, as proven, is subsequent to the commencement of that statute ; so that its bearing on the case must be decided.
By, the statute it is declared, that “ no action shall be brought upon any conuact for the sale of lands, &c. unless the agreeuaeat upon, which the action shall be *126 brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged there ■ with, or some other person by him thereunto lawfully authorised.”
This court is of opinion that the agreement in this case is clearly within the meaning of the act, and that to enforce such contracts would contravene its essential provision.
This case, it is believed, is a most striking instance of the policy of the law.
A land controversy of considerable magnitude, and some neighborhood expectation, adjusted and the boundaries settled, when and before whom ? At one time it is proven to have happened at the residence of the complainant, in the presence of his family only, many years prior to their deposing ; and at another timé’, in the hearing of Stephen Robinson, at a night corn shucking, who alone appears to have heard the conversation, and who in his first deposition, in 1799, proves it to have been about four mr five years previous thereto, and in his second carries it back to about the year 1789.
But the complainant himself seems to have anticipated the defendant’s objection to the supposed agreement ; for he shortly afterwards requested this witness to bear it in mind. Why he did not prefer an application to Robinson, the defendant, in order to commit the agreement to writing, is to be accounted for on the ground of a supposed refusal by Robinson ; and why this refusal should have been anticipated, leads to the presumption that the complainant understood his sentiments differently, in regard to the dispute, from what the conversation, in the opinion of the witness, seemed to amount to.
Neither party seems to have acted under the faith of the supposed agreement. Their conduct has not evinced an understanding by either, that the boundary spoken of was finally agreed on between them. But on the contrary, Robinson it seems had before sold a part of the very land claimed by Com under the agreement, and the purchaser, or those holding under him, were then, and before, residing on the land and near neighbors to the complainant. An agreement, which it is presumable would have become notorious in the neighborhood, appears to have remained known only to its firs *127 fitnesses. To guard against the consequences oi such contracts, in the overthrow of real estate, and the change of the boundaries to land, the legislature has wisely pro-ided the statute of frauds and perjuries, which requires those agreements to be in writing.
Certificate of pre-emption for marking and improving, cannot aid the entry with the surveyor — Acc. voL i, M'Get -vs. ‘Thompson? lZ$-~Patterfon -vs. Bradford? Hard. ig8 — * M* MUlen -m9 Miller, Hard/ 495- 6 — Lillard -vs- Taylor'% heirs, Pr. Dec, 248 —M' Ciena* ban <vi, Litton? Hugh, i%i — . Bryant and O-wings -vs Wah* lace, Hughes
So far as the entry of a preemption departe from the certi« ficate, it there» by loses its dignity as a preemption, and cannot be ri~ claimed by a'« mendment t© the entry.
We shall now proceed to consider the strength of the complainant’s claim ; for until its equity is ascertained, it will be unnecessary to examine the validity of the defendant’s claim.
The doctrine is considered as too well settled to be now shaken, that the commissioners’ certificate cannot be taken as coupled with the entry with the surveyor, in support of pre-emption entries founded on improvements. Hence it will be unnecessary in this case to attend to the location contained in the certificate.
But it becomes the more important to Understand correctly the effect of the original and amended entries in this contest, as the latter is subsequent to the emanation of the adversary patent.
So far as the entry with the surveyor departs from the location with the commissioners, the locator is thereby concluded, as the last indication of his will, and his claim must lose its pre-emptive dignity. Its superiority being once abandoned, by an entry of different Lind, in departing from the certificate, cannot be reclaimed by an amended entry. To tolerate such á principle, would introduce repugnant decisions, or do injustice to others claiming under entries made between the dates of the original and amended entries, interfering therewith.
From the objects delineated on the connected plat in this cause, the location with the commissioners would measurably cover different land, from that with the surveyor. The former would place the most of the land worth-westwárdly from the White Oak spring, and the Latter south- westwardly. But when the entry was made ;u October, 1781, locating land on the south-west, a subsequent locator would have been warranted in appropriating the adjacent residuum on the north-west ; so, when the amended entry was made in October, 1782, if it produced any effect on the original entry with the surveyor, it was either by supplying vague and uncertain calls, or by departing from it, in appropriating other Í3itd« But it could neither cure defective and uncertain! *128 call1;, to the prejudice of existing valid claims, which, without such amendment, would prevail against the original ; nor could it appropriate other land, which was previously appropriated by alega! entry, orb\ patent.
Hence it follows, that the entry in 1781, does not retain its pre-emptive superiority farther than it corresponds with the location in the certificate: and that the amended entry in October, 1/82, has no other dignity than an entry on a common treasury warrant, except so far as it corresponds, both with the entry in 1781, and the location with the commissioners ; and it must be considered as an original entry of its date, and not possessing the superiority of the entry made in October, 1781, on account of that date, except so far as both entries are shewn to cover the same land, with that certainty and precision required by law and the settled adjudications of this court.
But the amended entry being subsequent to the ad-versare patent, therefore, in order to prevail against if, it must not only possess the requisites of a good entry, but the original must also be supported, and as well as the amended entrv, cover the same land, so far as the claim can recover in this contest.
The amended entry cannot better the claim as it relates to a patent anterior thereto ; but it may destroy the superiority of the original entry, by departing therefrom, or substituting vague and uncertain calls.
Considering it incumbent on the complainant, to show that the amended entry is conformable to law, the court will first examine it.
Some doubt may be entertained, whether the original and amended entry ought not to be taken together, as one entire entry uniting all the calls oi both. But an examination of the entries compared with the objects called for in each, as delineated on the connected plat, show a manifest repugnance between them, and that the special calls in the amended entry exclude the operation of those in the original.
The entry i dii to adjoin Gresham’s and Gordon’s settlements in a given manner, and is aided by the call for the improt emuits of the locators.
Upon the existence and notoriety of these settlements and improvement.) at the time the entry was made, does it depend.
Notoriety of a furvev «.'Led for by an adjoining en'rv* can hr tiisot r - ed v.fh oniy by u’vjug a ci-reCt ion wi.ii. ⅛ Will lead to it by leaf í 30⅛ diligence, >r by ihowing that the furvey was or.J amable ro a Fide vol. i9 Neale vs GaU ¡envoy, i 39 — «* Ciciiand's heirs vs. Gt ay, 35-8 - — Ward and Kenton vs. Lee$ Yourg, 27~* GcoMett 6j*
vVhut appears remarkable in this ease, Ae entries in ?rst and 1782, both call for the improvements where Corn then, lived, and there is no evidence in the cause which shows where he did then live, or that he lived on he land in controversy, or any part of the tract, when run rot ,- Copi ■r entry was ma rif And there is. no proof of the ety of either Gresham’s or Gordon’s settlements, s of their surveys are furnished, and which appear to have been made early in the year 1781 ; though Gtesbam’s is in the name of Trigg, as his assignee.
Pin proof of the notoriety of these surveys could only be di pensed with by such a description'of them in the et ;rv, as would, by* reasonable inquiry or proper diligence, have lead to them ; or by shewing that the entries on vrüuh they'were made, were valid and the surveys ms lc in conformity thereto. Neither of which having been di ne in this case, therefore the entry cannot be jusmined (See Key vs. Matson, Hard. Rep. 70-75, ¿nd the cases there cited.)
For the reasons already given, it is unnecessary to is-q ’||⅝, whether the first entry with the surveyor was valid, ..nd gave sufficient description to the land.
Decree reversed, &c.