Brummell v. Harris.

BRUMMELL v. HARRIS et al., Appellants.

Division One, May 14, 1901.

1. Appeal: REVERSAL: STARE DECISIS. The decision of the appellate court remanding a cause for new trial is the law of the case upon the trial anew, in so far as the facts presented are the same.

2. Ejectment: AGREED LINE: ENCROACHMENTS: POSSESSION. Where the true dividing line between adjacent proprietors is unknown and they agree upon a fixed line as and for the true line, such agreement will be binding upon them and their privies. But the agreement alone is not sufficient to give either title up to this agreed line. It must be followed by each taking and retaining possession up to the agreed line. If either invades the part allotted to the other or encroaches upon the other's possession, the fact that a dividing line was agreed upon will be no defense to an ejectment to recover pos-

session of the land so encroached upon. So, also, if after the divid-ing .line is agreed upon, they disregard it, and thereby abrogate the agreement, the court will not enforce it, but will enforce the true dividing line as ascertained by the surveyor.

3. ———: ———: ———: ABANDONMENT. The shifting and moving of the fence away from the agreed line from time to time and at each time encroaching on the lands of the other is an abandonment of the agreement establishing the dividing line, and entitles that other to claim to the true line. Where one party has by such encroach-ments on the land of the other beyond the agreed line abandoned that agreement, he can not ask the court to enforce the agreement against the other party.

Appeal from Grundy Circuit Court.—*Hon. P. C. Stepp,* Judge.

AFFIRMED.

*O. G. Bain* and *O. G. Williams* for appellants.

(1) The. court should have set aside the verdict and granted the defendants a new trial for the reason that the ver-dict was contrary to the evidence and the unquestionable weight of it, and was rendered in absolute disregard of the instructions of the court, and manifestly "the result obtained by the ver-dict must thereupon be ascribed to prejudice, passion or par-tiality and not to that calm weighing of the facts in evidence which should always characterize the deliberations of the jury." State v. Primm, 68 Mo. 372; Reichenbach v. Ellerbe, 115 Mo. 594; Garret v. Greenwell, 92 Mo. 125; Whitsett v. Ransom, 79 Mo. 260; Avery v. Fitzgerald, 94 Mo. 216. (2) There was undoubted error in giving the third instruction for plain-tiff, in that, by its terms the two defenses of defendants, limita-tion and agreement, were hopelessly confused and jumbled to-gether. This as a general proposition was error. Defendants were entitled to have the two defenses "sharply, clearly and

pointedly" presented to the jury.    Mullally v. Greenwood, 127
Mo. 149.    (a)    And as specially applied to this case, in view
of the language of the opinion on a former appeal, was glar-
ingly erroneous.    Brummell v. Harris, 148 Mo. 440.    (b)
"Instructions must be considered with reference to possibilities
of their interpretation."    State v. Bank, 9 Mo. App. 491. (c)
"Instructions were designed *ex vi termini* to assist the jury
under the law, to find properly the facts and issues in contro-
versy.    The court had better give no instructions than such
as mystify, confuse and involve the case in intricacy, thereby
often misleading the jury, instead of giving light to them."
Crole v. Thomas, 17 Mo. 332.    (d)    Instructions calculated to
mislead or confuse the jury should not be given.    Donahoe
v. Railroad, 83 Mo. 566.    (3)    The court should have given
instructions in the nature of a demurrer to plaintiff's whole case
or a peremptory direction for the jury to find for defendants.
Jackson v. Hardin, 83 Mo. 175; Powell v. Railroad, 76 Mo.
80; Harris v. Woody, 9 Mo. 113; Lee v. David, 11 Mo. 114;
Alexander v. Harrison, 38 Mo. 358; Holman v. Railroad, 62
Mo. 562; Callahan v. Warne, 40 Mo. 131; Singleton v. Rail-
road, 41 Mo. 465; Bell v. Railroad, 72 Mo. 50; Maher v.
Railroad, 64 Mo. 269; Harlan v. Railroad, 64 Mo. 480;
Fletcher v. Railroad, 64 Mo. 484; Zimmerman v. Railroad,
71 Mo. 491; Proffat on Jury Trials, secs. 351-354; Railroad
v. Houston, 95 U. S. 697; Landis v. Hamilton, 77 Mo. 554;
Reichenbach v. Ellerbe, 115 Mo. 594; Long v. Moon, 107 Mo.
338; Hite v. Railroad, 130 Mo. 132.

*Harber & Knight* and *Hugh C. Smith* for respondent.

(1)    (a) The verdict is sustained not only by the weight,
but by the vast preponderence of the testimony.    (b)    And
even if it were not, it is not enough to warrant the reversal of

the judgment of the trial court that the verdict be against the weight of the evidence. Hahn v. Cotton, 136 Mo. 225; Grant v. Moon, 128 Mo. 47; Grace v. Railroad, 156 Mo. 301. (c) An insufficiency of the evidence even "unless there is no evidence tending to establish the fact found by the jury" is not enough to warrant a reversal. James v. Life Assn., 148 Mo. 16. (d) "And the appellate court in determining the evidence in support of a verdict for plaintiff will, laying aside defendant's controverting evidence, assume that plaintiffs' evidence is true, and give to it every favorable inference which may be reasonably and fairly drawn from it." James v. Mut. Assn., supra. (e) This court will not undertake to pass upon the sufficiency of the evidence unless there has been an entire failure of proof. State v. Fischer, 124 Mo. 462. (f) Much more force, then, will be given to the precedents in the foregoing paragraphs when they are considered in the light of the fact that this is the second appeal upon substantially the same evidence. The ruling of this court on the first trial as to the sufficiency of the evidence, is in the nature of *res adjudicata* and conclusive. Kerr v. Cushenbery, 69 Mo. App. 223. (g) There having been two successive verdicts in favor of the same parties on the same evidence, this court is precluded from again reviewing the evidence. R. S. 1899, sec. 801; Costigan v. Michael Trans. Co., 38 Mo. App. 222. (2) Respondent's third instruction is a succinct statement of the law of this case in conformity to this court's opinion when the case was here before, and comes up to the standard set by appellants; but if respondent's counsel were not "happy" in the choice of the language in which it was couched, appellant's polished counsel have certainly, in the instructions numbered 2, 3, 4, 5, 6 and 8, tendered the same issues in a manner that they can not, and this court will not, find fault with. Brummell v. Harris, 148 Mo. 430.

MARSHALL, J.—This is the second appeal of this case to this court. The decision on the former appeal is reported in 148 Mo. 430, and the former judgment in plaintiff's favor was then reversed because of errors in the instructions given for the plaintiff, and for vagueness in the judgment in regard to the land ordered restored by the judgment. Upon a trial anew in the circuit court the plaintiff again obtained judgment, and defendants have appealed a second time.

The action is in ejectment for a strip of land alleged in the petition to be twenty feet wide and lying in the north half of the northwest quarter of section thirteen, the west half of the southeast quarter of section twelve, and the northwest quarter of the northeast quarter of section thirteen, in township sixty-one, range twenty-four, in Grundy county. The petition is in the usual form. The amended answer, filed since the former decision in this case, is a general denial, a special plea of the establishment, in 1863, by agreement between the then adjoining owners, of a dividing line between the land of the plaintiff's grantors and the defendants' land, followed by a continuous occupancy, according to the line so established, by the respective owners ever since, a plea of the ten years' statute of limitation, and a disclaimer of possession or right of possession of or to any land lying west of the established line. The reply is a general denial.

The following plat, made by Brown, the former county surveyor, gives a clear understanding of the land in dispute:

Vol 162 mo—26

Brummell v. Harris.

The section line is shown by the heavy straight line; the line alleged to have been established in 1863 is shown by the waving line, from the north end to the wagon road and represents the location of the old worm fence; the waving line from the wagon road to the railroad represents a hedge which was planted west of the old line; and there is now a wire fence a few feet west of the hedge. The waving line south of the railroad represents the old worm fence; and the broken straight lines represent the wire fence extending the whole distance from north to south.

The decision of this court on former appeal was the law of the case upon the trial anew in the circuit court, so far as the facts presented were the same. [Hennessey v. Brewing Co., 145 Mo. 104; May v. Crawford, 150 Mo. 504; Bealey v. Smith, 158 Mo. 1. c. 522.] The circuit court complied with this rule and corrected the errors pointed out in the former trial. The defendants amended their answer so as to expressly disclaim as to the land lying west of the agreed line established in 1863. The evidence offered on the second trial showed that the Brown survey established the section lines and that those lines were shown by corner stones, tally stakes, and blazed trees. The verdict of the jury described the land awarded to the plaintiff as lying between the wire fence and hedge on the west, and the section or survey line on the east, and the judgment followed the verdict, so that the sheriff would have no difficulty in ascertaining the boundaries of the land to be restored to the plaintiff.

There is no substantial conflict in the evidence that in 1863 the true dividing line was unknown to the then adjoining owners, and that in order to settle their respective rights they got together and agreed upon a dividing line and staked it out, and built a worm or mortised fence on the line so established, and each agreed thereafter to conform to the line so established.

But there is also no conflict in the evidence that they did not adhere strictly to that line, but from time to time thereafter when the hedge was planted and when the wire fence was constructed the defendants ignored the established dividing line and encroached upon the land of the plaintiff and his grantor. It is this encroachment that the defendants seek to remedy by disclaiming any right or title thereto. The jury, however, did not stop with awarding possession of so much as had been so encroached upon and disclaimed, but went further and found for the plaintiff for all the land in the defendants' possession that lies west of the section line, which embraced not only the part so disclaimed, but also the part which lies between the established dividing line and the true or section line.

This verdict may, perhaps, have been induced by two material facts that are disclosed by the testimony: first, that after the Brown survey had marked the section line, the plaintiff three times set his fence on that line and each time the defendants chopped it down and threw it back on plaintiff's land and threatened him with violence if he attempted to put it up again; and, second, by the fact that although the defendants, after the former decision of this court, disclaimed as to the land lying between the agreed line of 1863 and the wire fence, nevertheless they still maintained the wire fence and remained in the actual possession of the part so disclaimed, thus holding on to what they conceded to be encroachments beyond what they claimed to be the dividing line established by agreement in 1863.

Where the true dividing line between adjacent proprietors is unknown and such owners agree upon a fixed line as for the true line, such agreement will be binding upon the parties and their privies. But it is just as essential that each should take and retain possession up to the agreed line as it is that such line should be established by agreement. If either invades

the part allotted to the other or encroaches upon the other's pos-session, the fact that a dividing line was agreed upon will be no defense to an action to recover the possession of the land so encroached upon.    Likewise, if after so agreeing upon such a dividing line the parties ignore it and by long course of conduct disregard it, they lose the right to ask the court to enforce a dividing line which they themselves ignored.    In such event the court can only enforce the true dividing line.    [Jenkins v. Trager, 40 Fed. 726; Archer v. Helm, 69 Miss. 730; Meyers v. Johnson, 15 Ind. 261; Robinson v. Corn, 5 Ky. 125; Smith v. Stewart, 7 Ky. Law Rep. 287; Gwynn v. Schwartz, 32 W. Va. 487; Teass v. City of St. Albans, 38 W. Va. 1; Allen v. Reed, 51 Cal. 362; Williams v. Montgomery, 16 Hun. 50; Atchison v. Pease, 96 Mo. 566; Smith v. McCorkle, 105 Mo. 135; Blair v. Smith, 16 Mo. 273; Major's Heirs v. Rice, 57 Mo. 384; Jacobs v. Moseley, 91 Mo. 457; Schad v. Sharp, 95 Mo. 573; Turner v. Baker, 64 Mo. 218; Goltermann v. Schier-meyer, 125 Mo. 291; Hedges v. Pollard, 149 Mo. 216; 4 Am. and Eng. Ency. of Law (2 Ed.), p. 860.]

In other words, where the adjoining owners agree upon a dividing line they must conform to that agreement.    If they do not, they can not ask the court to enforce it, for the courts will not enforce any agreement which the parties themselves have expressly abrogated or which they have abandoned or dis-regarded by their subsequent conduct.

Originally the worm fence was built on the agreed divid-ing line, partly by defendants and partly by plaintiff's grantors. But when defendants set out the hedge, between the railroad and the wagon road, the fence was set over several feet west, on plaintiff's grantor's land.    The defendants say this was done by consent to avoid some "washes" on the land.    Thereafter, from time to time, when the fence was repaired or reconstructed, it was placed a little further west than the agreed line.    Finally,

when the board and wire fence was constructed about 1887, it was placed altogether west of the agreed line, and at varying distances from that line.    So that neither the present wire fence, the hedge or the board and wire fence, is now at any point on the agreed line, but is all of it several feet west thereof, as the plat herein set out shows.

Now the defendants seek to avail themselves of the agreed line, notwithstanding neither party has observed it for years, by disclaiming as to all the land lying west thereof, although the fences remain as they were located west thereof.    On the other hand, the plaintiff treats the agreed line as abrogated by the conduct of the parties, and seeks to recover up to the true or section line.

At the instance of the defendants the court instructed the jury that the mere shifting of the fences from the agreed line, from time to time, did not constitute an abandonment or release of the agreed line, but that the burden of proof was upon the plaintiff to show, "that the defendants abandoned and released their claim to said old line of the rail fence being the true line of division."

This was a more favorable declaration of the law than the defendants were entitled to under the evidence in this case.    For the shifting of the fences was not the result of accident or mistake, but was a gradual and deliberate encroachment by defendants upon the lands of the plaintiff and his grantors, and hence, was an abandonment of the agreed line.

The court instructed the jury, at the plaintiff's instance, as follows:

"3.    If the jury find from the evidence that the survey designated by the witnesses as the 'Brown Survey,' establishes the correct line between the lands of plaintiff and defendants, then before plaintiff can be divested of his title thereto and the defendants hold the same under the statute of limitations, or

agreement, pleaded in their answer, the jury must find and believe from the evidence that the previous owners of the lands and defendants agreed upon a line as the true line, and this too, regardless of where the true line might in fact be, or might thereafter be determined upon, and that the owners of said premises built fence upon said agreed line, or that defendants, more than ten years prior to the institution of this suit on the fifteenth day of November, 1895, took possession of said lands claiming and intending the line to which they so took possession, to be the true line against the world without regard to where the true line might in fact be, and without any conditions whatsoever as to subsequent developments; and, although the defendants may have taken possession of a portion of plaintiff's lands twenty or more years since, claiming the line upon which they so erected the fence, to be the true boundary, yet, if they held the same subject to correction, then no matter how long they thus held said land they acquired no title beyond the true line.

"4. If it be true that the fences erected by defendants and the owners of the lands of the plaintiff have shifted and from time to time been changed, these facts together with all other facts and circumstances in evidence, are proper for the consideration of the jury in determining whether or not said fence or any of said fences were built in pursuance of an agreement, as well as upon the question as to whether or not defendants claimed said line where said fence or any of said fences were so erected, to be the true line regardless of where such true line in fact might be."

The defendants claim that instruction numbered three, supra, is erroneous, in that it confuses the defendants' defenses as to an agreed line, and as to the plea of the statute of limitations.

It is not asserted that the law so declared is not correctly

stated, as to either defense, but the objection is that both should not have been embraced in one instruction.    It is difficult to see how any juror could have been confused or misled by stating the two principles of law in the same instruction, especially as they are separated by a disjunctive conjunction.

Moreover, the defendants disclaimed title and right of possession as to so much of the land in controversy as lies between the agreed line and the present wire fence.    So that the jury could not have found that the defendant's possession of that much of the land was adverse, and although the defendants were still in possession of that part at the time of the trial, they acquired no right thereto under the statute of limitations.    And as to the part lying between the true line and the agreed line, the defendants' right to possession was based wholly upon the agreement establishing the dividing line, and, as shown, to make out a complete defense upon this theory, it was necessary for the defendants to show a faithful compliance therewith by taking possession of only so much as the agreement allotted to them. Their answer and all the testimony shows that they did not comply with that agreement but on the contrary ignored it and encroached upon the plaintiff's land.    Having thus ignored the agreement they are in no position to ask the court to enforce the agreement against the other party.    By their conduct they have abandoned the agreement, and nothing remains but for the law to settle the controversy, the same as if no agreement had ever been made, by recognizing the true dividing line.    This has now been done by the verdicts of two juries, and upon this trial this result has been reached upon evidence abundantly sufficient to support the finding of fact, and under instructions even more favorable to defendants than they were entitled to, and which instructions comply with the law as declared by this court on the former appeal of the case, and we therefore refuse to disturb the finding and judgment.

The judgment of the circuit court is affirmed.    All concur.